## Ohio & Kentucky Railway Company v. Beuris.

(Decided February 5, 1912.)

### Appeal from Breathitt Circuit Court.

1. Railroads—Peadings—Negligence.—In an action against a railroad company by a passenger who was injured by the derailment of a train, it was competent to show the general condition of the track at the place of the accident under an averment in the petition that the train was negligently operated.

2. Same—Negligent Operation—What is.—Negligence in the operation of a train is not necessarily confined to the condition of the engine and cars or to the speed at which the train is run, or to the manner in which it is loaded. It is negligence in the operation of a train to run it at a high rate of speed over defective tracks; and, under a charge of negligent operation, it is competent to show the condition of the track in connection with the speed of the train at this place.

3. Same—Evidence—Inspection of Place After Accident.—Where the location of an accident is shown by marks on the ties and in other ways, it is permissible for witnesses to describe generally the condition of the track at the place several days after the accident, when it is shown that the conditions were the same as those existing when the accident occurred.

4. Evidence—Non-expert Witnesses—Opinion.—Persons who qualify themselves to give evidence may describe to the jury the physical appearance and condition of a person before and after he was injured; but it is not competent for these witnesses to testify what the injured party told them his condition was or to express an opinion that from his appearance he was in bad health.

FINLEY E. FOGG, O. H. POLLARD for appellant.

J. J. C. BACH, GRANNIS BACH, REDWINE & PATTON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, who was a passenger on one of appellant's trains was severely injured in a wreck occasioned by the car in which he was riding leaving the track and rolling down an embankment. In this action to recover damages for the injuries sustained, the jury assessed his recovery at $2,500. The decided weight of the evidence tends to show that the derailment of the train was due to the unsafe and dangerous condition of the track and the roadbed at the place where the accident hap-

pened. Several witnesses were introduced who examined the roadbed and track shortly after the accident, and they testify to facts showing that the ties were rotten and unfit for service, that the track was not ballasted, and that in other respects it was unsafe for travel. No objection is made to the instructions, nor indeed could objections be made to them by appellant, as they are entirely too favorable to it in fixing the degree of care the company owed appellee a passenger in the operation of the train. But a reversal is asked because of alleged error committed by the trial court in the admission of evidence.

It is said by counsel for appellant that the evidence to which we will presently call attention, aside from its inherent incompetency, was inadmissible because not covered by the averments of the petition. The petition charged that "the wreck of said train of cars was caused by the gross negligence and carelessness of defendants, its agents and servants, in so negligently and carelessly operating, maintaining and leaving therein cars so heavily loaded with coal, ties, etc., of such heavy weight that it spread the rails, and left the roadbed of said road. * * * He says that the said defendant also carelessly and negligently permitted its roadbed at the place where said wreck occurred and for a considerable distance on each side thereof, to get out of repair and to became dangerous and unfit for use, in this: That the ties across said road had at said place become rotten, and the rails worn and weakened, * * * and that but for such unsafe and dangerous condition of said road at said place, and for the negligent and careless manner in which said train was loaded, and being operated, said wreck and injury would not have occurred." It will be observed that there are two charges of negligence in the petition, one: That the train was so negligently and carelessly operated as to spread the rails and leave the roadbed, and the other, that the ties and rails at the place of the accident were insufficient, defective and unsafe. Counsel for appellant insists that under this pleading, the only defects in the track that could be shown were such as related to the condition of the ties and rails, but we do not think the plaintiff was confined under the pleading to negligence of the company in this particular. Of course, if the only act of negligence charged in the petition was contained in the averment that "the ties across said road had at said place become

rotten and the rails worn and weakened'' evidence of negligence would be confined to these items; but the other averment that the train was operated in a negligent and careless manner was broad enough to permit the plaintiff to show the general condition of the track at the place the accident occurred. This averment did not point out particularly any defects in the roadbed, nor does it relate directly to the specific averment as to the condition of the rails and ties. Negligence in the operation and management of trains is not necessarily confined to the condition of the engine and cars, or to the speed at which a train is run, or to the manner in which it is loaded, or to other specific acts relating particularly to the cars composing the train; for it would be as much negligence in the operation and management of a train to run it at a high rate of speed over a defective and dangerous track as it would be to have defective or dangerous cars or to run it when in any other respect the train or any part of it was unsafe for use. And so we think that it was competent under this general charge of negligence in the operation of the train to show that the road at the point where the accident occurred was located in a dangerous place and that it was in an unsafe condition and for these reasons negligent to run a train over it at the high rate of speed it was shown in the evidence this train was running at the time it left the track.

It is further complained that the trial judge permitted appellee and others to testify as to the condition of the track, rails and ties after the accident occurred, but we think this evidence was competent, as the cars after leaving the track run some distance on the ties and left marks that could plainly be seen when the track was examined some days afterwards. And, as the exact location of the accident was plainly shown by the marks on the ties, it was permissible for appellee and other witnesses to describe generally the condition of the track at that place when they examined it, as there is no suggestion that any change had been made in the conditions existing when the wreck occurred except to repair the track and put it in better condition than it was.

Another contention is that it was error to permit a civil engineer to testify as to the general faulty construction of the track at this place, which is on a curve, but, it was proper to admit this evidence for the purpose of showing that the persons in charge of the train did not exercise sufficient care in running it over this

character of road. Plainly it might be gross negligence to run a train at a high rate of speed over a dangerous and defective roadbed, while it would not be negligence to run it at a slow and careful rate of speed. Therefore, in connection with the evidence of the speed of this train, which appellee testifies was about 35 miles an hour, it was entirely relevant to show the condition of the track to illustrate that it was negligent to run it at this speed over this track.

Another ground for reversal relied on is that the trial court permitted several witnesses to testify as to the physical condition and appearance of appellee before and after he received the injuries complained of. We know of no reason why non-expert witnesses who qualify themselves to give evidence should not say what the physical condition and appearance of a party was before and after he received the injury for which he was seeking to recover damages. A non-expert witness is just as well qualified as an expert would be to describe the physical condition and appearance of a person before and after he has been injured; and it was entirely proper to permit the jury to hear evidence of the size, weight and general physical condition of appellee before he was injured, and his size, weight and general physical condition afterwards. Of course, it was entirely unnecessary as well as incompetent to ask these witnesses what the appearance of appellee was at the time of the trial, as he was present and the jury could see for themselves what his appearance was. A few of these witnesses were permitted to say that appellee told them he was complaining and to say that from his appearance that he was in bad health, but this evidence although incompetent was not prejudicial, as it was really all developed in the competent testimony of the witnesses.

Another alleged error is the failure of the trial court to grant a change of venue, but this error is not pressed on our attention by counsel—doubtless for the very good reason that the evidence does not show any cause why a change of venue should have been granted.

Upon the whole case we feel satisfied that the appellant had a fair trial, and the judgment is affirmed.