## Maryland Casualty Company v. Burns.

(Decided September 27, 1912.)

### Appeal from Daviess Circuit Court.

1. Insurance, Accident — Action— Evidence—Sufficiency. — In an action on an accident insurance policy resulting in the death of the insured, evidence examined and held sufficient to sustain the finding of the jury.

2. Same—Notice of Accident—Stipulation of Policy—Validity of.— Where an accident policy provides for notice to be given the company within ten days after the accident occurs, the insured himself, if he survive the accident, should give the contract notice within the specified time, unless his faculties be so impaired, or he should be so circumstanced that the giving of such notice is impossible; but in case of his death, the beneficiary has ten days after acquiring knowledge of the existence of the contract to give notice, or if the right of action devolve upon a personal representative, he has ten days after his qualification, and after acquiring such knowledge, to give the notice. If the company has notice, there is no necessity for further notice by the beneficiary.

CLAY & CLAY for appellant.

LAVEGA CLEMENTS, BEN D. RINGO for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On June 19, 1908, the Maryland Casualty Company issued to Terrence W. Burns an accident insurance policy, whereby, in consideration of the payment of a premium of $15, the company insured him for a period of twelve months from that date, in the sum of $2,000, against "death of disability, while sane, and resulting directly and independently of all other causes, from bodily injudies effected through external, violent and accidental means." The policy was renewed from time to time, and was in full force when Terrence Burns died on December 17, 1910. The beneficiary of the policy was plaintiff, Florence Burns, wife of Terrence W. Burns.

Among other provisions, the policy contained the following:

"Immediate written notice must be given the company at Baltimore or its duly authorized agent, of any accident and injury for which a claim is to be made, with

full particulars thereof, and full name and address of the insured. Unless such notice be given within ten days after the accident, no claim shall be valid."

Upon the death of Terrence W. Burns, plaintiff, Florence Burns, brought this action to recover the sum of $2,000. She charged in her petition that at the time of his death, Terrence W. Burns was sane, and that his death resulted directly and independently of all other causes from bodily injuries effected through external, violent and accidental means, as therein set out. She further alleged that she did not know or ascertain that her husband held said policy until after January 1, 1911, and that immediately upon ascertaining that said policy was in full force and effect, and on January 10, 1911, she gave written notice to the defendant company at Baltimore of the accidental death of her husband, with full particulars thereof, and the full name and address of the insured. She further alleged that the defendant had and used blank forms upon which to make affirmative proof of death; that she requested the defendant company and its duly authorized agent to furnish her necessary blank forms to make out affirmative proof of death, but that it failed and refused to do so; that defendant, shortly after plaintiff notified it of the death of the insured, sent its representative and agent to the city of Owensboro and made a full and complete investigation of the accident resulting in the death of the insured, and examined the witnesses and physicians, and took from them written statements of facts, and thus became informed of all the facts concerning said accident as fully and completely as plaintiff could make to it by any proofs of death. As defendant company failed and refused to furnish her with blank forms upon which to make affirmative proof of the death of the insured, according to the terms of the policy, after appellant had completely and fully investigated the facts concerning said accident, and on March 31, 1911, she sent to the defendant company through the United States mail further affirmative proof of the death of the insured, which was received by it, and again requested it to send her blank forms to make up any proof of death it might require, but defendant failed and refused to do so.

She further alleged that defendant then and now denied all liability under said policy. The defendant denied the allegations of the petition with reference to

the cause of Burns' death, and also pleaded plaintiff's failure to furnish notice of accident within ten days.

A trial before a jury resulted in a verdict and judgment in favor of plaintiff for $2,000. The defendant appeals.

It is first insisted that the verdict is flagrantly against the evidence. As to the facts connected with Burns' death, there is practically no dispute. Burns was a large man, and weighed about 200 pounds. He was employed as a clerk in the store of W. A. Guenther & Sons. When he left home at seven o'clock in the morning, he complained of not feeling well. He afterwards stated to one of the men in the store that he had an awful pain in his chest, and lay down on a counter in the store. This counter was about three feet wide, and three feet above the floor, and was near an elevated platform upon which rested a row of stoves. The stoves were about two feet from the counter. A few minutes after he had lain down, a noise was heard, and upon approaching the place from which the noise came, it was found that Burns had fallen from the counter to the floor below. He was lying face downwards. There was a large contusion on his right forehead near the temple. There was a small pool of blood under his face. This blood appeared to come from one of his nostrils. He was picked up and carried to the rear of the store, and immediately died.

According to the plaintiff's evidence, deceased was a strong, vigorous man. The undertaker who embalmed the body says that there was no leakage of blood from the arteries or veins into the body, and that there was no blood in the throat; if there had been he would have discovered it. Dr. Townsend, who examined the deceased the next day, testified to the previous physical condition and health of the deceased. He described the contusion on the head, and gave as his opinion that the fall from the counter produced the death. He said that such a fall as the insured received would produce death, but that medical science could not explain why. He further said that death in such a case might be instantaneous, or might occur some time after the shock.

For the defendant, Dr. Pennington, coroner of Daviess County, testified that he held an inquest on the body of the deceased about an hour after he died. He found two contusions on his forehead which looked as if

they were produced by a fall or lick producing sudden, enlargement. There was no fracture of any kind that he could ascertain. Could not say whether the fall caused his death or not. In his opinion, the man had a hemorrhage, and in struggling for breath in this congested condition, or effort to inhale, he fell and death ensued. Was of the opinion that a hemorrhage was the predisposing cause, but as to whether or not that actually caused the man's death, he could not say, as nothing but an autopsy would have revealed the true cause. In his opinion, the hemorrhage was going on before the man fell.

Dr. Arch Dixon testified that, in his opinion, deceased's death was not caused by a fall or any shock resulting from a fall, as death does not come on so suddenly from a shock. As there was no fracture, he could not see how a fall could have produced death in so short a time. In his opinion, the man had congestion of the lungs, or angina pectoris, and fell off the counter in a death struggle, and was practically dead when he struck the floor. On cross-examination, the doctor stated that congestion of the lungs produces hemorrhages, and that as a result of said hemorrhage, the lungs would be infiltrated with blood. Dr. Rash testified that, in his opinion, the most probable cause of the death of the insured was angina pectoris. He doubted if an autopsy would have revealed the cause of the death of the insured. Dr. Hoover testified that, in his opinion, deceased did not die from the effect of the fall, but it was his candid opinion that he died from the rupture of a blood vessel.

It is argued with great earnestness that the weight of the evidence is to the effect that the fall of the deceased did not cause his death, but that it resulted from congestion of the lungs, or angina pectoris, or the rupture of a blood vessel. On the one hand, plaintiff's evidence shows that the deceased was a large man. He fell from the counter over three feet high. There was a large contusion on his forehead, near the temple. The blood upon the floor came from one of his nostrils. A reputable physician testifies that, in his opinion, death resulted from the fall. On the other hand, the evidence for defendant shows that deceased complained of severe pains in his chest just before lying down, and four reputable physicians testified that his death did not result from the fall, but was the result either of congestion of

the lungs, angina pectoris, or the rupture of a pulmonary blood vessel. While it may be true that, sitting as a jury, we might have reached a conclusion different from that reached by the jury in this case, yet we cannot say that their finding is flagrantly against the evidence.

Another contention of defendant is that written notice of the accident resulting in the death of deceased within ten days from the time the accident occurred was a condition precedent to the right to maintain an action on the policy, and that because of plaintiff's failure to give such notice, it was entitled either to a peremptory instruction, or to have submitted to the jury the question whether or not the notice was given within a reasonable time. Plaintiff alleged in her petition that she did not know of the policy until after January 1, 1911, and that on January 10th she gave written notice to the defendant company at Baltimore. Her testimony is to the same effect. In its instructions to the jury, the court held as a matter of law that if she did not know of the existence of the policy, and did give notice within ten days after she acquired such knowledge, such notice was sufficient. The general rule is that where a policy contains a stipulation to the effect that notice must be given within a specified time, such stipulation is valid and must be complied with before a recovery can be had on the policy, except where not made a condition precedent to such right of recovery, or where impossible of performance. 1 Cyc., 274; Odd Fellows Fraternal Acc. Assn. v. Earl, 70 Fed., 16; Peele v. Provident Fund Soc., 147 Ind., 543, 44 N. E., 661; Hoffman v. Mfgrs. Acc. Indem. Co., 56 Mo. App., 301; Mfgrs. Acc. Indem. Co. v. Fletcher, 5 Ohio Cir. Ct., 633; Provident L. Ins. Co. v. Vaum, 29 Ind., 236; Phillips v. U. S. Benevolent Soc., 120 Mich., 142. Our conclusion is that under a policy like the one in question, the insured himself, if he survive the accident, should give the contract notice, unless his faculties be so impaired or he be so circumstanced that the giving of such notice is impossible. But in case of the death of the insured, the beneficiary named in the policy has ten days after acquiring knowledge of the existence of the contract to give notice; or if the right of action devolve upon a personal representative, he shall have ten days after his qualification, and after acquiring such knowledge, to give the notice. To require the giving of the notice before it is possible to give it would work a

hardship which would be contrary to public policy, and which cannot be sustained upon any theory of right. As the question whether or not plaintiff knew of the existence of the policy, and whether or not, after acquiring such knowledge, she gave notice within ten days, was in effect submitted to the jury, we see no ground for complaint upon this score. Nor do we think defendant was prejudiced by the latter part of instruction one, telling the jury that if defendant, on or about the 10th day of January, 1911, came to the city of Owensboro and fully and completely investigated the facts about the death of Burns, this was in effect a sufficient notice. This part of the instruction must be considered in connection with the former part of the instruction, with reference to knowledge on the part of the beneficiary. The evidence that she did not know of the existence of the policy until after January 1st, is all one way. Therefore, the result was the same whether she gave notice within ten days, or defendant actually had notice within that time; for, if it had notice within ten days after she acquired knowledge of the existence of the policy, there was no necessity for further notifying it of that which it already knew.

Judgment affirmed.