## Travelers Insurance Co. v. Davies.

(Decided March 5, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Insurance, Life—Facts in Regard to Sickness and Death of Deceased—Evidence of Physician as an Expert—Question for Jury.

—The proof for the plaintiff showing certain facts in regard to the sickness and death of the deceased, a physician may be asked as an expert what in his opinion on these facts was the cause of the death of the deceased; but he should not be asked to give his opinion on all the evidence as to what was the cause of the death, as this was a question for the jury.

2.  Evidence—Testimony of Physician as an Expert—Teaching of Medical Authorities—Reading From.—When a physician gives his opinion as an expert, he may, on cross examination, be asked as to the teachings of standard medical authorities on the question, and paragraphs from a standard medical work may be read to him as part of the question; but only a standard work should be allowed to be read.

3.  Evidence—Expert Testimony—Question for Jury.—There being evidence by experts that a wrench or a blow might cause the injury complained of, the court did not err in submitting both questions to the jury.

TRABUE, DOOLAN & COX, WILLIAM B. SMITH and R. C. DICKENSON for appellant.

HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Collin A. Davies held a policy of insurance in the Travelers Insurance Company, insuring his life against injuries effected directly through external, violent and accidental means. The policy was for $5,000, and with its accumulations, amounted at the time of the insured's death to $6,700. It provided for payment of double indemnity in case of death from injuries sustained while riding as a passenger upon a railroad passenger car. The insured died on April 8, 1909, and this action was brought by his wife, who was the beneficiary, to recover on the policy, alleging that his death was due to an injury effected through external, violent and accidental means while he was riding as a passenger upon a railroad passenger car. Upon the trial of the case before a jury the plaintiff recovered. The defendant appeals.

The proof for the plaintiff showed in substance these facts: The insured was for many years and at the time of his death, the superintendent of the Lexington and Cincinnati division of the Louisville and Nashville Railroad Company. He was five feet, eight inches high, and

rather heavily built. In the year 1906, he had a nervous
breakdown, due to the fact that there were a number of
wrecks on his division which worried him no little; but
after some months he recovered from the effects of this
breakdown, and was in his usual robust health. For
some time prior to March 28, 1909, he had been in per-
fect health. On that day, which was Sunday, he and his
wife and a friend named Trammell, who lived in the
house with them, rode out in the afternoon on one of
the electric cars to Orell. As they were returning from
Orell, and nearing a station known as Wyatt, one of the
axles of the car broke; the car let down, and got off the
track. Davies was sitting in a seat by the side of his
wife, and Trammell in the seat behind them. When the
accident occurred the car swayed violently from side to
side. Davies caught the bottom of the seat with his
hand but was thrown by the oscillation of the car into
the aisle and then in another movement of the car, pos-
sibly, as he was getting up, was thrown violently against
the back of the seat on which he had been sitting, the side
of his abdomen receiving a blow from the seat. Tram-
mell testified that he was thrown over in front of him;
that he expected the car to turn over, and had grabbed
the back of the seat in front of him, and put one foot
up against the side of the window to brace himself in
case the car turned over. The testimony of Trammell
as to these matters is sustained by the testimony of Mrs.
Davies. Several ladies in the car screamed, there being
sixteen or eighteen passengers in the car. The car soon
stopped and Davies then rose and said: "It's all right,
be quiet, there is no danger." He then went out of the
car and took some measurements showing just where the
injury occurred, as he said, for the benefit of his friend,
Funk, the superintendent of the line. Another car was
sent out and they came on into the city. Davies said at
the scene of the accident that he was not hurt, and that
nobody was hurt seemed to be then agreed by everybody.
But as they went into the city, Mrs. Davies noticed that
her husband was very pale, and he then said to Tram-
mell that he was suffering from nausea. The next morn-
ing he went down to his office and telephoned to Funk,
his friend, that he was on the car, that nobody was hurt,
and that nobody could have been hurt; that if anybody
sued for damages, to summon him as a witness. He went
to his office every day that week and did his work as
usual. But his wife testified that he looked sick; that he

was never well after he was hurt, and showed that something was wrong. On Tuesday of the next week he ate a light lunch about midday, and soon affter this lunch, was found in his office suffering violent pain. He left the office and went to his family physician, who prescribed for him and sent him home in a carriage. The physician came to see him again that night, but he grew steadily worse, and the next day other physicians were called in, and an immediate operation was advised. They took him to an infirmary and operated on him that night. When the operating physician cut the skin of the abdomen he found in the flesh a secretion which showed that the patient was suffering from pancreatitis or inflammation of the pancreas, and on opening the cavity it was found filled with water and blood. They immediately closed up the wound as death was inevitable, and he died a few hours later. The cause of his death was acute hemorrhagic pancreatitis, which means that there has been a hemorrhage of the pancreas setting up inflammation and that the disease is acute not chronic. According to the testimony of the witnesses introduced by the plaintiff, pancreatitis may be caused by a blow upon the abdomen, or a severe wrench or strain, and usually will set up in eight or ten days after the injury is received, the reason being that the juices of the pancreas act upon the escaping blood and for a while keep the disease from manifesting itself. These physicians gave it as their opinion that on the facts above stated the death of the deceased was due to the injury he received on the car, although he did not know he had received an injury at the time.

On the other hand, the proof for the defendant was in effect that the car was running very slowly; that there was no lurching of the car sufficient to throw anybody from a seat; that nobody was thrown off the seat; that Davies for some months had suffered from indigestion; that the muscles of the abdomen were rigid, indicating that there was trouble there. The physicians who testified for it stated that intestinal troubles were the more common cause of pancreatitis, and that only a very violent blow would cause it, the pancreas lying back of the stomach under the ribs, and in a very much protected part of the body. It also proved that Davies said to the man who came into his office that he had indigestion, that he had had these spells, but they always left him; that this one was a little harder than usual. None of the family when the doctors were called in told them anything of

Davies having received an injury, and the family physician did not mention it to the other doctors. Davies was then too sick to talk.

We think it may be fairly assumed from the proof that neither the family physician, nor any member of the family, attributed Davies' sickness to what had occurred on the car, until the operation was performed, and it was learned that acute hemorrhagic pancreatitis had set up; and we think it may be fairly inferred that Davies was of the same opinion, and thought that he was suffering from a digestive trouble. Still the fact remains, if the evidence for the plaintiff be true, that Davies was in perfect health up to the time of the accident on the car. The weight of the evidence is with the plaintiff on this question. He was a robust man, weighing about 175 pounds, looking ruddy and healthy and showing no signs of any trouble with his digestive organs. He had had no medical attention for more than a year except for a cold or something of that sort. Pancreatitis is a disease that is little known. It has become familiar to the medical profession only within the last ten years, and it is not strange that Davies and his family did not attribute the trouble to the accident on the car. The doctors gave it as their opinion not only that such an injury as here was shown to be received might cause pancreatitis, but that in their judgment the injury was the cause of the disease, if he was up to that time healthy. The weight of the evidence is with the defendant as to the fact that the car was running slowly, and that its oscillation was not so violent as to throw a man off the seat. But the credibility of the witnesses was for the jury. They heard and saw the witnesses; there were circumstances tending to sustain the testimony for the plaintiff and we cannot say the verdict of the jury is palpably against the evidence.

It is insisted chiefly that the court erred in the admission of the expert testimony. It is said that by hypothetical questions appellee's experts were permitted to decide pivotal questions in the case which were for the jury. We have read the evidence with care, and we do not find any error in this regard. No witness was allowed to state what in his opinion under all the evidence caused Davies' death. Each witness was only allowed to state what was the cause of Davies' death upon a hypothetical state of case set out in a question, the state of facts being the facts shown by the proof for the plaintiff. Whether these facts existed the jury were to determine,

and if they did not find the facts to exist, the opinion of the experts would have no weight. The expert witnesses were not allowed to determine for the jury whether the facts existed, they only gave their opinion assuming the facts to be as indicated in the question.

It is also insisted that the court erred in allowing medical authorities to be used on the trial in the cross examination of the defendant's expert witnesses. One or two of the physicians who were introduced on the trial had previously seen one case of pancreatitis. But none of them had seen enough of the disease to speak as experts upon it independently of medical authority, and they all relied on and referred to medical authorities for the conclusions which they stated. When the experts for the defendant had testified that pancreatitis could not be caused by a certain injury, the court allowed them on cross-examination to be asked if certain medical authorities, known to be authoritative, did not give instances of pancreatitis having been so caused, and the statements of these authorities were permitted to be read to the witnesses as a part of the question. We do not see that there was any error in this. The examination followed the rule laid down by this court in Williams v. Nally, 20 R. 245, and Clark v. Commonwealth, 111 Ky., 443. While there is some conflict of authority on the question, we see no reason for departing from the rule which we have laid down, which seems to us reasonable and just. When one doctor testifies that the medical authorities teach so and so and another doctor testifies that they teach the contrary, the jury would have little light to guide them in determining between the conflicting statements. But if the medical authorities referred to are presented to the witnesses, and read in the hearing of the jury, they can form a more intelligent idea as to which of the witnesses is supported by the text. The rule is that medical books are not admissible as affirmative evidence, and the plaintiff did not attempt to introduce any books as affirmative evidence of her case. The medical authorities were only brought in on the cross-examination of a physician, who had undertaken to state to the jury what the teaching of the authorities was. Of course no book should be allowed to be brought in for this purpose which is not a standard authority; but the standard authorities may be read as a part of a question to a witness on cross-examination, to test the accuracy of his information and the value of his expert testimony.

The court by his instructions told the jury in substance that if they believed from the evidence that at the time of the breaking down of the car, Davies sustained a wrench or blow, and that such wrench or blow, if any, alone caused his death, they should find for the plaintiff. It is insisted that there is no evidence that his death was due to a wrench, and that this part of the instruction should have been omitted. But Dr. Ellmore, who was one of the expert physicians introduced by the plaintiff, in answer to a question by the defendant's attorney, on cross-examination, made this statement: "It might have occurred from the sudden start with which he attempted to get up, when the car started rocking from side to side." Dr. Frank, another expert witness for the plaintiff, on his cross-examination, made this statement: "A gunshot wound might injure the pancreas, and a fall from some distance might injure the pancreas, other violence of any sort." And again he says further on in his cross-examination: "There is another case reported of a prisoner in jail who turned a hand spring and produced pancreatitis." The rule in this State is that if there is any evidence the question is for the jury; and under the scintilla rule, the court properly submitted the question to the jury.

The question of whether the notice was given in time was fairly submitted to the jury by the court's instructions, and under all the facts we do not see that there was any substantial error on the trial to the prejudice of appellant.

Judgment affirmed.