## Pacific Mutual Life Insurance Company v. McCabe.

(Decided February 5, 1914.)

### Appeal from Fayette Circuit Court.

1. Insurance, Accident—Construction of Policy.—In a case of doubt, the language of an insurance policy will be construed in favor of the insured, and a doubtful clause in one part of the policy will not be held to limit an express provision in another part of it.

2. Insurance, Accident—Construction of Policy.—An accident policy providing for the payment of a death loss and in addition, disability benefits for ninety days, a subsequent clause providing that the right to make a claim under the policy shall bar the right to make any other claim, will be read as referring to other provisions of the policy for the payment of benefits.

3. Insurance, Accident—Accident Resulting in Peritonitis—Liability.—An accident resulting in a ruptured colon, which caused infection resulting in peritonitis from which the insured died, the company is liable for his death under a provision exempting it for liability for death from peritonitis, unless due to infection, the immediate result of an accident.

4. Insurance, Accident—Verdict of Coroner's Jury Not Competent Evidence in Suit on Policy.—The verdict of a jury at a coroner's inquest is not competent evidence in a suit on an insurance policy.

W. C. G. HOBBS for appellant.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The Pacific Mutual Life Insurance Company issued to William McCabe on July 21, 1911, a policy of insurance, his brother, Thomas McCabe, being named as beneficiary, by which it insured him "against the results, hereinafter set forth, of and caused solely by external, violent and accidental means at once producing visible

and external mark upon the body, such means so producing such mark hereinafter called accident, such accident happening during the term of and while this policy is in full force and effect; against the effects, hereinafter set forth, of illness, and promises to pay benefits as hereinafter set forth. * * * 1. Disability benefits at the rate of forty ($40.00) dollars per month, not exceeding twenty-four months, that such accident, independently of all other causes, immediately totally and continuously disables the insured from the time of such accident from the performance of any and every kind of duty pertaining to the insured's occupation. * * * 3. If any of the total losses specified in the following table of total loss benefits shall result from such accident, independently of all other causes, within ninety days from the happening of such accident, the company will pay: For loss of 1. Life, Four Hundred ($400.00) Dollars (The principal sum of this policy). (Here follows table.) If any of the losses specified in the above table of total loss benefits shall result from such accident, independently of all other causes, after ninety days and within twenty-four months from the happening of such accident, provided the insured is continuously and totally disabled from engaging in any and every work and occupation for wages or profit from the happening of such accident to the date of such total loss, then the company will pay the amount specified in the above table of total loss benefits, and in addition, disability benefits provided for in clause 1 hereof for the time between date of accident and date of such total loss. * * * 5. Illness benefits at the rate of forty ($40.00) dollars per month for the time, not exceeding six months, that said insured is necessarily and continuously confined inside the house and regularly visited in the house by a legally qualified physician by reason of disease that is contracted and begins after this policy has been maintained in force continuously for two months.''

The policy also contained these provisions:

10. ''In the event of any claim arising under this policy (irrespective of its cause) due directly or indirectly, wholly or in part, to any chronic disease or infirmity, tuberculosis, rheumatism, paralysis, apoplexy, orchitis, neuritis, locomotor ataxia, lumbago, strains, lame back, sciatica, vaccination, Bright's disease, dementia, insanity, vertigo, fits, hernia, or in the event of any

accident otherwise covered by this policy resulting in hernia, or either accident or illness of which there shall be no visible marks on the body (drowning excepted); then and in all such cases benefits shall be paid solely under illness benefits as provided under clause 5 of this policy, but in no event for an amount in excess of the amount payable for one month's house confinement under said clause, anything to the contrary herein notwithstanding. But no indemnity shall be payable under this policy for any loss due directly or indirectly, wholly or in part, to any venereal disease, or to any disease not common to both sexes.

11. "In the event of any claim arising under this policy (irrespective of its cause) due directly or indirectly, wholly or in part, to sunstroke, peritonitis, appendicitis, abscesses, ulcers, blood poisoning, infection, or contact with poisonous or infectious substances, then and in all such cases benefits shall be paid solely under illness benefits as provided under clause 5 of this policy; except that in the event of claim arising due to infection or blood poisoning following immediately after and as a direct result of accident, such infection or poisoning having its inception while insured is under the care of a physician, then in such case benefits shall be paid under accident benefits as provided in clauses 1, 2 and 3 of this policy.

d. "The right to make claim for one of the above specified results of any accident or illness or disease shall exclude all other claims based upon the same accident or illness or disease, and the right to make any claim except a claim under clauses 1, 2 and 5 shall cause this policy to cease and it shall be surrendered to the company."

William McCabe was a painter by trade, and on December 12, 1911, while the policy was in force, he suffered a fall by which he sustained a severe bruise on his left hip. He was confined to his house by the injury and was treated by a physician who administered to the external wound. The wound got better and on January 6 McCabe applied for a disability benefit under clause 1 of his policy. The amount, $33.00, was paid to him and he receipted to the company for it, he then supposing that he would be able to go to work within a month from the time he was injured; but instead of getting better after January 12, he began suffering pain in his stomach and

side, and was not able to do any work. On the evening
of January 29, he ate two soft boiled eggs for supper,
said he did not feel well and would go to bed. He went
to bed and the next morning at nine o'clock was found
in bed dead, nobody having seen him from the time he
went to his room until that time. This suit was brought
by the beneficiary against the insurance company to re-
cover $400, the amount for which his life was insured.
On a trial of the case in the circuit court the plaintiff
recovered. The defendant appeals.

The proof on the trial showed in addition to the facts
we have stated that after his death, an autopsy was per-
formed upon his body which disclosed the fact that there
was a hole as large as a silver quarter in the transverse
colon; that nature attempted to close the aperture and
the escaping matter passed into the omentum; that the
matter escaping from the colon and gathered in the
omentum was the cause that the bowels instead of being
in a natural condition, were found stuck together. The
surgeons who testified on the trial testified that death
ensued when the omentum no longer contained this mat-
ter and it escaped into the peritoneum. They also testi-
fied that from the condition in which they found the
bowels, the injury to the colon was the cause of the trou-
ble; that this might have came from such a fall as we
have described and that the condition of the bowels in-
dicated that the trouble with the colon had existed some
weeks. Their testimony warranted the jury under the
facts in concluding that the fall caused the injury to the
colon and the injury to the colon caused the effects they
found in the body of the deceased; for the insured was
never well after the accident.

1. It is insisted for the appellant that William Mc-
Cabe having collected a disability benefit no recovery can
be had for the loss of his life. But it will be observed that
by clause 3 of the policy, the company was obligated to
pay the amount specified in the table of total loss benefits
if he died in 90 days and in addition disability benefits
provided for in clause 1. The insured was by this clause
of his policy entitled to not only the disability benefit for
one month, but the $400 for the loss of his life was also
payable when he died on January 29. Clause "d" was not
intended to conflict with this clause. The words used
therein are "the right to make claim." In other words,
the right to make claim for certain things under the

policy excluded all other claims based upon the same accident, illness or disease. There is nothing in this clause properly construed to show that the payment of a disability benefit in any way affected the right to collect the principal sum of the policy in case the insured died, the purpose of clause "d" being simply to show that the policy did not contemplate a number of claims under the different provisions of the policy such as disability benefits and sick benefits also for same illness or accident; but such a limitation must not be read as conflicting with an express provision in the previous part of the policy, giving a right to collect the disability benefit and also the death loss. The insurer selects his own language and in case of doubt, the policy will be construed in favor of the insured, and the positive undertaking in one part of the policy will not be construed as negatived by a doubtful clause in another part.

2. The insured did not die of hernia; the term has a well defined meaning, and so clause 10 has no application. He died of peritonitis according to the testimony, and clause 11 applies, but by that clause in the event of claim arising due to infection and following immediately after, and as a direct result of accident, and having its inception while the insured is under the care of a physician, then in such case, accident benefits shall be paid as provided in clauses 1 and 3 of the policy. The proof for the plaintiff showed that he died of infection following immediately after and as the direct result of an accident; that the infection had its inception while he was under the care of a physician, although the physician did not discover it, as it was an internal trouble and not then manifesting itself by anything externally. The fair meaning of clause 11 is that for the diseases therein mentioned only sick benefits will be paid as provided in clause 5 unless there is an infection, the direct result of accident, and this infection produces the disease.

3. The instructions of the court fairly submitted to the jury the law of the case as we have outlined it, and the evidence warranted the jury in the verdict they found. There was no error in the admission or rejection of evidence. The court properly refused to admit in evidence the verdict of the coroner's jury. (Aetna Life Ins. Co. v. Milward, 118 Ky., 716.)

Judgment affirmed.