## Prudential Insurance Co. of America v. Dudderer.

(Decided Dec. 8, 1933.)

R. W. KEENON and C. S. LANDRUM for appellant.
CLARENCE MILLER and BEN H. SCOTT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

There was and is a pedestrian bridge over the tracks of the Louisville & Nashville Railroad in Irvine, Ky., with steps at each end, whereby those using it may ascend to and descend from it. At about 11:15 p. m., on May 22, 1931, John K. Dudderer, who was then an employee of the railroad company, in going from his work to his mother's home, where he resided, crossed that bridge, and in some way he was caused to fall down the steps at its opposite end from the one he entered upon it, and whereby he received an injury to the back part of his skull, and other minor bruises. It was a Friday night, and he was immediately taken to his mother's home in a semiconscious condition, and did not arise from his bed until Sunday morning, when he came down stairs, but did not remain long until he again took to his bed, after which a physician was called and ministered to him for some days, when he was carried to a hospital, where he lingered until June 3, following the accident, on which day he died. Prior to that time his employer, the Louisville & Nashville Railroad Company, procured from the appellant and defendant below, Prudential Insurance Company of America, a group insurance policy upon the lives of its employees, including Dudderer, who was then 31 years of age. Following the issuing of the group policy, and pursuant to its provisions, defendant issued a certificate to Dudderer wherein it was stipulated, inter alia, that it would pay to the beneficiary (insured's mother, who is the appellee and plaintiff below) at his death "from natural causes" $2,000, but, if his death was produced "by accident as defined in said (group) insurance policy," then there would be due the beneficiary $3,000. The certificate provided for other benefits, but none of them are involved in this action, and it is therefore unnecessary to mention them.

Proof of the insured's death was made, and defendant paid the beneficiary $2,000, the amount stipulated for death produced by natural causes, but it declined and refused to pay the extra $1,000 for the accidental death of insured upon the ground that the injuries sustained were not produced in the manner set out in the group policy so as to entitle the beneficiary to recover. Plaintiff then filed this action against it in

the Estill circuit court to recover the amount that it so declined to pay, and in her petition she alleged that the accident which befell the insured was such a one as was defined by the group insurance policy, which was in full force and effect at the time the accident occurred, as was also the individual certificate issued to the insured; that defendant had refused and failed to pay the amount sought to be recovered ($1,000), and she then prayed judgment against it for that amount. The answer denied that the accident was of the nature described in the group policy (but which was never filed as a part of the record), and which description it attempted to set out in substance, but not verbatim.

As so averred in the answer, the accidental death for which the extra $1,000 would be due was described as an accident resulting "directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body and that such death occurred within ninety days of the accident, provided, however, that no accidental death benefit shall be payable, or should be payable, if such death resulted directly or indirectly from bodily or mental infirmity or disease in any form." It was then averred that the accident sustained by the insured was not one coming within such alleged provisions of the group policy. Following pleadings made the issues and upon trial, the jury, under the instructions given to it by the court, returned a verdict in favor of plaintiff for the full amount she sought to recover, upon which judgment was rendered, and, defendant's motions for a new trial having been overruled, it prosecutes this appeal, urging by its counsel three grounds for reversal of the judgment, which are: (1) Error in the admission and rejection of testimony; (2) refusal of the court to sustain defendant's motion for a peremptory instruction in its favor offered both at the close of plaintiff's testimony and at the close of all the testimony; and (3) error in instructions given to the jury and in refusing those offered by defendant, each of which will be briefly considered and determined in the order named.

In support of ground 1, it is strenuously insisted that certain testimony of plaintiff, the beneficiary,

and mother of the insured, was incompetent under the provisions of section 606 of our Civil Code of Practice as being transactions with a deceased person. Such testimony in part consisted in describing the wounds on the head and body of the insured which the mother observed when he was brought to her home from the place of the accident. Perhaps at one or two places in her testimony she made statements as to what the deceased said during the period he remained at home until he was taken to the hospital, and she also described his condition during that time. At least a majority of the questions to which defendant's counsel objected were ruled out by the court; the objection being sustained. In others the objection was not ruled upon, and many of the questions were not objected to at all. One objection that the court did not overrule was to this question: "Did you examine him that night?" The answer was that she did, and found a considerable bruised spot on the back of insured's head. She then told about his retiring for the night and not arising promptly the next morning as was his custom, and to which no objection was made. In an answer to a question, witness said: "I asked him was he going to get up and he said 'yes.'" That answer is followed by this notation in the record "Objection by defendant to the conversation." There was no ruling whatever thereon. Later in her examination she was asked: "What did he say about pain?" Defendant's objection thereto was overruled, and her answer was: "Well, he just said he could not turn over and lie on his back because the pain of his head hurt him so he couldn't lie on it." So far as we are able to discover from the record, that is the only answer embodying any conversation between witness and the deceased coming within the inhibition of the section of the Code, supra, conceding that witness was incompetent to so testify under its provisions. If her testimony was all that the record contained on that subject, and conceding that she was incompetent to give it, there would then be some support to the argument that it was materially prejudicial to defendant.

But the testimony of the doctor, the death certificate, and other evidence in the case uncontradictedly established the facts to which such alleged incompetent witness testified, and none of it is attempted to be denied by any witness who appeared in the case for either

side, and under such circumstances, though we should concede the incompetency of the witness to the full extent argued by counsel, the alleged prejudicial effect of its introduction by that witness cannot be approved by us, since, we repeat, the facts so testified to by her were, not only proven by other witnesses who were clearly competent for the purpose, but they were accepted by everyone as true and correct. It is also argued in support of this ground that the court erred in permitting plaintiff to introduce a duly certified copy of the death certificate as required to be made by section 2062a-21, wherein it was stated by the officer who prepared and signed it that the cause of death of the deceased was "Subdural hemorrhage, traumatic." But the section of the statute referred to expressly provides that "any such copy of the record of * * * death, when properly certified by the state registrar [as was true in this case] to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated." We therefore conclude that none of the arguments made in support of ground 1 is meritorious.

■ Only a weak effort is made in briefs in support of ground 2, urged for reversal. The one that is made is couched in this language: "We do not think that there was sufficient evidence to take the case to the jury for the reason that there is no evidence to show what caused John K. Dudderer's fall if he did fall," and which is made in the face of the fact that a witness who was crossing the bridge about thirty feet behind the decedent, and who was traveling in the same direction, but who at the moment of the fall did not have his eyes fixed upon him, heard him fall, and afterwards assisted in recovering his body and sending it to his home, and who testified about the bruise on the head to which the mother and two physicians also testified, with no one contradicting it. There was likewise testimony that on that afternoon it rained continuously from about 1 until 5 o'clock, thereby producing a slipperiness on both the floor of the bridge and its steps. There was no intimation by any witness that the bruises upon the body of the deceased, including the one on his head, were produced by anything other than the fall from the floor of the bridge or near the top of the steps. It was but an instant from the time that the witness saw him near the top of the steps until he heard the noise made by his

falling, and witness immediately found his body below, with the indicated bruises and injuries upon it. It is therefore clearly apparent that, such facts and circumstances if not sufficient to expressly prove that the falling of the deceased was accidental, yet they were amply sufficient to entitle the jury to infer that the fall was so produced. We therefore conclude that this ground is also without merit.

■ The argument in favor of ground 3 is bottomed upon the testimony of the only witness introduced by defendant, who said that he saw the deceased crossing the bridge about 2:30 o'clock on the same afternoon, and that he "kinda walked kind of swaggering along; he was on the bridge in front of me.

"Q. What do you mean by swaggering along? A. Well kindly from one side of the bridge to the other.

"Q. Staggering. A. Well, he was staggering, kindly walked across, you know, across the bridge."

It was in proof that something like two and a half years prior to the occasion here involved the deceased was injured in an automobile accident and sustained some plainful flesh wounds to his face and other parts of his body, but it was uncontradictedly proven that he completely recovered from such injuries and thereafter performed his work as he had theretofore done. The inference is sought to be drawn that the results of such injuries, so sustained in the automobile accident, in some way operated upon the brain or nerves of the deceased as to cause the alleged "swaggering" which was testified to by defendant's only witness, and because of which the accident to him was not the character and kind covered by the policy and for which recovery is herein sought. It is therefore argued that the fall of decedent was produced because of the existence of such bodily infirmities or diseased condition resulting from the automobile accident, under which deceased was laboring at the time he sustained his fatal one.

In the first place, we do not interpret the evidence as sustaining any such deduction, and the testimony of the physicians introduced at the trial by plaintiff contradict any such theory, which, at best, is far-fetched and rests upon unsupported surmise. In the next place, the alleged "swaggering" of deceased, as testified to

by defendant's only witness, is not of a nature to convince one that it was the result of any bodily or mental disease with which he was then afflicted. It was observed by the witness some nine or ten hours prior to the fatal occasion, and the extent of it was not described in a manner to indicate that deceased was even intoxicated, much less diseased, and the witness was the only one that could be found to confirm such facts, although, if the described action was caused as is now contended for by counsel, many others with whom deceased came in contact on that, and other preceding days, could have been found to corroborate that witness and who possibly could have given a more satisfying description of such alleged movements by deecased. As given, the testimony of defendant's sole witness, and upon which counsel seeks to rest the defense, is so meager, vague, uncertain, and nonprobative as to possess but little, if any, value, and it is doubtful if it produced even a scintilla of proof that decedent's fall was the result of a disease or affliction resulting from his prior automobile accident.

But, however that may be, the court in its instructions to the jury required it to believe that the injuries to deceased were sustained by his accidently slipping or stumbling so as to cause him to fall down the steps and thereby sustained them, and that such described accident, plus the effect of the injuries received, "directly and independently of all other causes resulted in his death," before it could return a verdict for plaintiff. The instruction also said that "unless you so believe you will find for the defendant." It is our conclusion that what the court therein said substantially submitted defendant's interpretation of the group policy, and gave to it the benefit of the chief defense it interposed. The jury found against it, and its verdict is amply sustained by the evidence.

Wherefore the judgment is affirmed.