## Life & Casualty Co. of Tennessee v. Gream.

(Decided Feb. 13, 1934.)

802

L. B. ALEXANDER for appellant.

HOLIFIELD, GARDNER & McDONALD and SETH T. BOAZ for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment is for $1,000 on an insurance policy covering accidental death under the stipulated terms. The grounds upon which a reversal is asked are not unusual, namely, the court erred in overruling the defendant's motion for a peremptory instruction, the verdict is flagrantly against the evidence, incompetent evidence, incorrect instruction, and improper argument.

For the premium of 5 cents a week, the policy provided, among other indemnities, for the payment of $1,000 to the widow of Pinkney A. Gream on account of loss of life as the result of bodily injuries effected solely by external, violent, and accidental means under certain circumstances. One of those was "by collision of or by any accident to any private horse drawn vehicle or private motor driven automobile in or on which the insured is riding or driving * * * provided * * * there shall be some external or visible injury on the said vehicle * * * and provided * * * the collision or accident must occur on a public highway as heretofore defined."

The insured was a coal peddler, selling coal by the scuttle from a one-horse wagon. The accident occurred in the late afternoon September 7, 1932, while he was driving on one of the streets of Mayfield. As he passed

A. L. Sasseen, who was also driving a horse, Gream threw up his hand as if to signal Sasseen to stop. He did so within a short distance, and as he looked back Gream was turning his horse around, when for some cause the horse lunged forward and Gream fell backward from the seat into the bed of the wagon. His head or neck struck a coal bucket or shovel. The seat was something like 14 or 16 inches high. The deceased's twelve year old stepson, who was with him, testified to substantially the same thing. When he was taken home, according to his widow, Gream did not know anything, and continued in that unconscious state until his death some 36 hours later. When Dr. Taylor first saw him that night, he was sleeping and was not disturbed. The next morning the doctor concluded he had had a stroke of paralysis caused by a blood clot on the brain, which in turn had been caused by the injury he received when he fell backwards into the wagon bed. He had bruises on his shoulder, back of his neck, and at the base of the brain. The doctor's positive opinion was that Gream's death was due to this injury and accident. A number of other witnesses testified to seeing bruises on his body. The wagon was taken home on that Wednesday evening and had not been used when it was examined the following Monday morning. At that time the main front bolster was found to be broken in two where the pin went through it. This was a fresh break.

The defendant introduced Dr. Pryor, who had gone to the place of the accident. He testified that Gream was then having a fit which he presumed to be epileptic. He felt his pulse and looked him over for a minute. The man regained consciousness and asked for a "shot," and, in answer to the doctor's question, told him he had been getting "shots." No professional service was rendered the man by Dr. Pryor then or at any time. He further testified that Gream got up out of the wagon and jumped to the ground when he refused to give him a "shot." The doctor did not detect any injury. Dr. Pryor testified that the one and only way to tell that a patient has a clot on the brain is to perform an autopsy by sawing off the top of the skull. On further examination, he stated that the obstruction of a blood vessel by a clot may also produce paralysis. On the assumption that the insured had had a paralytic stroke on the 7th and died on the 9th, Dr. Pryor expressed the opinion he had an embolism of the brain. He testified that an

epileptic fit would not cause that condition, but that the condition which causes fits might produce paralysis. A neighbor testified that two or three months before the accident Gream was at his home hollering and that he jumped off the bed and was down on the floor on his back. But he was drunk then, said the witness. Two or three days before his death a witness related that Gream, in getting on his wagon, sat down too quick and missed the seat and fell on the wheel and from the wheel to the street. It is not claimed that he was hurt then. Before this testimony came in, Dr. Taylor, who had attended Gream and his family for several years, had testified on cross-examination that Gream had had nervous spells for four or five years and could not be held in bed. He had given him treatment to equalize the blood and hypodermics to quiet him. He found no evidence of epilepsy.

The appellant claims it was entitled to judgment as a matter of law because no witness testified that the insured received a fatal injury on September 7th when he fell, and Dr. Pryor testified that he did not do so. No witness testified that the bruises they observed were not there before this accident, and it is argued they may have been received in the previous fall. We cannot give such conclusive effect to the negative evidence. The bruises were on his head, neck, and shoulders which had been struck in this fall. There is also the opinion of the doctor who attended him, based upon his professional knowledge of the patient for many years and his examinations and observations, that this injury caused his death. There is the contradictory evidence of the other doctor and the circumstances related by the defendant's witnesses, which tend to show that the insured may have had an epileptic fit and that the condition which brought that upon him may possibly have caused his death. It must be remembered, however, in considering the argument for a peremptory instruction or that the verdict is flagrantly against the evidence, that we are to consider not only the letter of the evidence but all the facts which that evidence reasonably tends to prove and all the inferences favorable to the plaintiff which can be drawn or fairly deduced from such facts. We think Ætna Life Insurance Co. v. Bethel, 140 Ky. 609, 131 S. W. 523, upon which appellant relies, is distinguishable on the facts. There the insured died of autointoxication, and the overwhelming weight of the evidence was

that the condition was not attributable to a fall which he received nearly three weeks before his death. It was therefore held that the evidence was not sufficient to sustain a verdict for the beneficiary because the accident was not shown to have been the proximate cause of death. In the case at bar, there was much evidence tending to show the fall was the proximate cause of death. See Standard Life & Accident Insurance Co. v. Thomas, 17 S. W. 275, 13 Ky. Law Rep. 593; Continental Casualty Co. v. Mathis, 150 Ky. 477, 150 S. W. 507; Travelers' Insurance Co. v. Davies, 152 Ky. 600, 153 S. W. 956; Pacific Mutual Life Insurance Co. v. McCabe, 157 Ky. 270, 162 S. W. 1136; Maryland Casualty Co. v. Burns, 149 Ky. 550, 149 S. W. 867; Prudential Insurance Co. of America v. Dudderer, 251 Ky. 627, 65 S. W. (2d) 745. We are of the opinion that the issue was properly submitted to the jury.

There is some evidence admitted over the defendant's objection which it is argued was incompetent. The beneficiary, the widow of the insured, testified that after he was brought home he was unconscious and did not know anything until his death. This was not of material importance to the issue, and, whether section 606 of the Civil Code of Practice barred the testimony or not, the evidence was not prejudicial. Ætna Life Insurance Co. v. Bethel, supra; Sovereign Camp, Woodmen of the World, v. Havas, 217 Ky. 846, 290 S. W. 690; Prudential Insurance Co. of America v. Dudderer, supra. Nor was this evidence or that of the several nonmedical witnesses that they had observed fresh bruises or contusions on the body of the insured, both before and after his death incompetent. The bruising of the body is such a common experience that most any one can recognize the visible result, and it does not take a doctor, usually regarded as an expert, to identify or describe that physical condition. Ohio & Kentucky Railway Co. v. Beuris, 146 Ky. 612, 143 S. W. 16; Prudential Insurance Co. v. Hodge's Adm'x, 232 Ky. 44, 22 S. W. (2d) 435. For the same reason—that it is a condition so commonly known by the ordinary person— must the claim of incompetency of the witnesses, who expressed an opinion that the damage to the wagon was a fresh break, be denied. It does not take an expert in woodcraft to see that a break is fresh.

The court instructed the jury to find for the defendant unless they should believe from the evidence

that the death of the insured "resulted solely from external, violent, or accidental means." The policy provided for indemnity for death resulting from "external, violent, and accidental means." The use of the word "or" for the word "and" in the instruction was probably an inadvertence. Perhaps in some instances the disjunctive instead of the conjunctive word in an instruction might be prejudicially erroneous, but we cannot regard it as such here. Wiedman v. Line, 13 Ky. Law Rep. 590. All three of the elements were proven in the case; that is, that the insured was externally injured, by violence, and accidentally. We cannot conceive any prejudice resulted to the defendant by this error.

The final ground for reversal is improper argument of counsel for the plaintiff. He said:

"I have had a great deal of pleasure in trying this case, because I have seen a great number of these policies, and I have concluded that there was no accident covered by this policy, unless you went around to the First Baptist Church and fell off of the steps. I have at last found a case covered by the policy. * * * Plaintiff is only one of the few persons I have ever seen who had a case that came under the limited provisions of this policy, and I have seen quite a few of them."

Really it was not necessary that the insured should fall off the steps of the First Baptist Church, or any other, in order to recover under the policy. But it was almost so. One of the arguments submitted for reversal of the judgment is that the policy was very limited in its scope. The law of argument is not so cruel as to prohibit a lawyer indulging in a little extravagance now and then for forensic effect.

Perceiving no prejudicial error, the judgment is affirmed.