JONES, Justice.
Appellant was convicted in the Circuit Court of Marion County of manslaughter *828 by culpable negligence in the operation of an automobile. Pie was sentenced to seven and one-half years in the Penitentiary, from which conviction and sentence he appeals.
Here, he raises three questions: (1) That the trial court erred in admitting testimony as to the statements made by appellant in the emergency room of the hospital shortly after the accident, it being alleged that he was in a state of unconsciousness or semi-consciousness ; (2) that the trial court erred in allowing lay witnesses to give opinion as to whether the appellant was conscious at that time; and, (3) that the verdict was against the overwhelming weight of the evidence.
None of these assignments are well taken, and we affirm the case. In this opinion, we will discuss the third assignment first, and the other two jointly.
Immediately after the accident, which occurred some miles east of Columbia, two highway patrolmen went to the scene of the accident and testified that they found two vehicles, a 1960 Ford Falcon and a'1955 Chevrolet. The road runs approximately east and west. The Chevrolet was north and south, with the front end headed south across the eastbound lane of traffic. The Falcon was off the south shoulder of the road through a fence that had been knocked down, and the front end of the Falcon headed east. Debris was found at the center of the eastbound lane of traffic and there were “gouged” out places in that lane. There was no debris in the westbound lane of traffic. The signs showed where the Chevrolet left the north, improved portion of the highway 145 steps east of the point of impact. There were signs where the Chevrolet came back onto the paved portion of the road and continued to the point of impact. There were no skid marks. Mr. Hitt, the occupant of the Falcon, was killed, and his body was carried to the Colonial Funeral Home in Columbia. The patrolman went to the hospital, entered the emergency room, and found a patient who identified himself to them as Joseph C. Wells. The patrolman testified that on that occasion Wells was very loud and boisterous, but was conscious. There was alcohol on his breath. Patrolman Flynt gave as his opinion that Wells was conscious. Fie asked Wells if he had been operating the Chevrolet at the time of the accident and he said he was. The Falcon vehicle was driven backward by the impact, a distance of twenty-nine steps or approximately ninety feet. Pictures were introduced which showed the cars in the position described by the patrolman. They also showed the signs where the automobile left the north side of the road. From this point westward, the view was unobstructed for a long distance. Each of the cars was heavily damaged on the left front.
The undertaker testified that Mr. Hitt’s body was badly mutilated, having head and facial injuries, a broken left leg, internal injuries, probable broken ribs and a ruptured liver. He established the identity of the body and the fact that the man was dead.
Mr. Horace Stringer who lived in the vicinity of the place of the accident did not see the wreck, but heard the noise and was one of the first to arrive at the scene. He found the Ford car knocked back into his pecan orchard and the other car lying on its right side. The fence was broken. There were two men at the Chevrolet, one in the car, and one on the outside. The appellant, Joseph C. Wells, was still in the car. This witness said that Wells was unconscious at that time. The Falcon had been traveling east and the 1955 Chevrolet was traveling west, and the accident occurred in the eastbound lane. Mr. Hitt’s automobile was knocked backwards through the fence.
Michael Moree, 13 years of age, testified that his father operated a store near the place of the accident; that he was there and saw the Chevrolet car coming around the curve “doing about 60” and saw the car run off the road and swerve onto the wrong side of the road where it hit the other car. When asked whether it was doing 60, or *829 more than 60, he said that he could not say, but that it was going fast. He. said the place of the collision was “more on the wrong side of the road.” He said he was on the side of the store shooting a BB gun and heard the Chevrolet coming before he saw it. He then stopped and looked.
Mr. Burley Moree, who operated the store, was in his house behind the store and, hearing the commotion, went to the scene. He testified in line with the other witnesses.
Glen Moree, 17 years of age, the son of Mr. Burley Moree, was there and saw part of the accident. He looked out the window and saw there was a car coming down the road at a great rate of speed, going toward Columbia. It went into the curve traveling too fast and ran off the edge of the road. He said he could not see the collision, but could tell the car stopped behind some trees. He testified it was traveling more than 60 miles per hour. He went to the scene and his description thereof is in line with the other witnesses.
Mr. Ray Cook was about 400 feet east of the scene of the accident. He saw the Chevrolet was “running wide open” when it went “cross-ways” of the road and hit the Ford. He stated the Chevrolet ran off the road at the curve and he, the witness, jumped behind a pine tree, thinking it might hit him.
Irma Hitt, 12 year old daughter of Mr. Hitt who was killed, was riding in the Falcon on the occasion of the accident. She testified her father was traveling at a medium speed; that she saw the other car coming and her father tried to pull off the side of the road to his right. She remembers nothing further. This was the State’s case.
The appellant was the only witness to testify for the defendant. He admitted that prior to the accident they had left his uncle’s house, and that he was driving when they left, but did not know who was driving at the time of the accident, because his mind was “totally blank” after the accident. He further testified that he did not regain consciousness until he was in a hospital at Jackson.
From this evidence, the jury could have found that at the time of the accident the appellant had been drinking; that he was driving with his car out of control; that no effort was made to slow his car prior to the accident, although the view to the west was unobstructed for considerable distance; and, that the appellant was guilty of such gross negligence as to evince wanton, reckless disregard for the safety of human life, or such indifference to the consequences of his act as to render his conduct tantamount to willfulness. Smith v. State, 197 Miss. 802, 20 So.2d 701, 161 A.L.R. 1 (1945). The verdict was not against the overwhelming weight of the evidence.
The other two assignments simply relate to the conversations between the highway patrolmen and the appellant at the hospital, the patrolman testifying that the appellant was conscious, and he making an issue of the fact as to that. No nurse, doctor, nor other person, except those mentioned testified on this issue.
It is asserted that the testimony of the patrolman as to the consciousness of appellant was inadmissible. However, the following citations hold that it was: Madison v. State, 40 Ala.App. 62, 109 So.2d 749 (1958); Jewel Tea Co. v. McCrary, 197 Ark. 294, 122 S.W.2d 534 (1938); People of State of California v. Sanford, 43 Cal. 29 (1872); Life & Casualty Co. of Tenn. v. Gream, 252 Ky. 801, 68 S.W.2d 402 (1934); Ineeda Laundry v. Newton, 33 S.W.2d 208 (Tex.Civ.App.1930); State v. Mooradian, 132 Wash. 37, 231 P. 24 (1924); and, 32 C.J.S. Evidence § 546(23) at p. 162 & n. 30 (1964).
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY and INZER, JJ., concur.