## National Life & Accident Insurance Company v. Cox.

### (Decided March 16, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Insurance—Beneficiaries—Evidence.—In an action brought by the beneficiary on a policy insuring the life of her husband against death directly and independently of all other causes from bodily injury, received accidentally and through external and violent means, the evidence for the plaintiff showing injury sustained by the insured from his accidentally falling down a stairway, followed by paralysis of his lower limbs, pneumonia, and at the end of six days, his death; the question whether the injuries sustained in the accident were the proximate cause of his death, or whether it resulted from pneumonia, independently of such injuries, was properly submitted to the decision of the jury by the instructions of the trial court.

2. Evidence—Hospital Record—Competency.—Under the rules of evidence a hospital record containing remarks regarding a patient, entered thereon by a nurse or interne, is not competent evidence to prove the facts stated. Such facts must be shown by them as witnesses. It is mere private memoranda, and can be used only by the party who made it, to refresh his recollection in testifying.

3. Appeal and Error—Evidence.—In this action evidence examined and held sufficient to sustain the finding of the jury.

HENRY W. SANDERS and JOHN S. MILLIKEN for appellant.

J. J. KAVANAUGH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

In this action the appellee, Helen B. Cox, widow of John W. Cox, and beneficiary in a policy whereby the appellant, National Life & Accident Insurance Company, insured the life of her husband against death, resulting directly and independently of all other causes

from bodily injury received accidentally and through external and violent means, recovered of the insurance company in the court below a verdict and judgment for $550.00, the full amount of insurance named in the policy. From that judgment the latter prosecutes this appeal.

It appears from the allegations of the petition that the death of John W. Cox resulted from injuries sustained by him under the following circumstances: On the night of December 21st, 1914, he visited the home of his friends, Thomas Cole and wife, at 343 East Jefferson street, Louisville. The latter, who, as well as Cox and his wife, the appellee, are people of color, occupied apartments on the third floor of the building, in attempting to leave which, Cox stumbled on the third floor platform and fell therefrom with great force down the steps to the second floor of the house. He was found at the foot of the steps with his head against a door. There were many marks or bruises upon his head, arms, small of the back, and lower end of the spine. At the request of Hetty Simmons, a colored woman who conducted the rooming house, the police officers were called in and he was arrested and taken to jail. On the following morning, the discovery being made that he was paralyzed from the waist down and otherwise helpless, he was removed from the jail to the Louisville City Hospital, where he remained confined to his bed until his death, which occurred five days later.

The answer of the appellant denied any liability under the policy, alleged that the death of the insured did not result directly and independently of all other causes from a bodily injury or injuries effected accidently and through external and violent means, but was wholly caused by pneumonia or other disease having no connection with his fall down the stairway at the residence of Cole. The appellant asks the reversal of the judgment upon three grounds: (1) That the evidence introduced by appellee does not bring the case within the terms of the contract evidenced by the policy, for which reason the trial court should have peremptorily directed a verdict for the appellant; (2) that the trial court erred in instructing the jury; (3) that the trial court erred in rejecting certain record evidence offered by the appellant. The provisions of the policy upon which the first contention is rested are as follows:

"Does hereby insure John W. Cox, herein called the 'assured,' in Class C as twist maker from the time this policy is delivered to the assured until twelve o'clock noon (standard time at the place where the assured resides) of the 1st day of May, 1914, and, for such further period as the advanced payment of the renewal premium of $2.25 per month will maintain this policy in force. *Against loss of life, limb, limbs, sight or speech and hearing,* resulting directly and independently of all other causes from a bodily injury which is effected accidentally and through external and violent means (excluding suicide, sane or insane), herein called 'such injury' in the initial principal sum of $550.00."

Obviously, the above provision of the policy specifying the ground of the insurance company's liability is susceptible of but one construction. Its meaning is that in order for the beneficiary to recover upon the policy for the death of the insured, the evidence must show that the death was produced by external, violent and accidental means independent of other causes. In other words, the accident and injury resulting therefrom must be the proximate cause of the death to make the insurance company liable. Fidelity & Casualty Co. of N. Y. v. Cooper, &c., 137 Ky. 544; Aetna Life Insurance Co. v. Bethel, 140 Ky. 609; Travelers Insurance Co. v. Davies, 152 Ky. 600.

It appears from the evidence that decedent, John W. Cox, at the time of the accident resulting in his injuries, was about forty-five years of age and in excellent health; that he had been all of his life a robust, vigorous and industrious man and for many years had been employed by the Burley Tobacco Company as a "twist maker;" that his habits were good and he had worked regularly every day. These facts were furnished by the testimony of N. R. Preston, superintendent of the Burley Tobacco Company; Thomas Cole, Dr. Merchant, and the appellant, Helen B. Cox, who had known him from ten to twenty-seven years. According to the evidence of the several witnesses who saw the decedent after the accident, there were numerous bruises upon his body. Dr. Merchant testified that there were bruises on each of his arms, a bruise on the temple, which included a blood clot, and a very severe bruise at the lower end of the spinal column. Dr. Sanders testified that on the right arm above the elbow the skin

was torn off for a space of four inches in circumference; that there was also a bruise on the left forearm, and on this arm above the elbow the skin was torn off; that there was a bruise on his left temple, a slight abrasion back of the left ear; a small bruise on the back and other bruises on the buttock. In addition to Drs. Merchant and Sanders, Drs. James E. Helms, F. S. Graves, Ellis Duncan and W. E. Gardner testified to various evidences of traumatism. All the physicians named agreed in the opinion and statement that pneumonia could be and frequently is produced by traumatism, and at least three of them positively testified that the decedent, following the accident, had traumatic pneumonia and paralysis of the lower limbs, and that traumatic pneumonia is a disease well known to the medical profession. They also testified that the paralysis with which the decedent was afflicted, could have been produced by the injuries sustained by him in the accident.

Dr. Sanders, upon being asked about the decedent's condition, said he had traumatic or hypostatic pneumonia. That hypostatic pneumonia comes on a person from occupying a recumbent position. "It generally follows an injury and it happens with anybody when the vitality is low where he had been injured. The serum from the blood will run in the lungs and set up an inflammation and it collects in the lowest part; if he was lying on his back it would collect, as it did in this man, in the back portion of the lungs." Both he and Dr. Merchant expressed the opinion that the pneumonia, paralysis and death of the decedent were produced by the fall and injuries which he sustained. The only evidence that tended, in any way, to materially contradict that to which we have referred, was furnished by the testimony of appellant's witness, Dr. H. R. Livesay, an interne at the city hospital, who seemed to have had little experience as a practitioner, and holds his position of interne as a means of perfecting his medical education. He claims to have found few, if any, bruises on the decedent's body, while attending him in the hospital; and that he could find no injuries to the skin or person that required dressing. In his opinion, the death of the decedent was due to pneumonia. He also testified that he did not believe the pneumonia was produced by any injuries received by the decedent from the accident, and that he had never seen a case of pneumonia

due to traumatism.  Some attempt was made by appellant to prove that decedent was intoxicated at the time of the accident and that his fall resulted from such intoxication, but the only evidence offered in support of this theory was that of Hetty Simmons,  the colored woman in charge of the rooming house where the accident occurred.

Some of the physicians testifying in the case seemed unwilling to express a positive opinion as to the cause of the decedent's death.  One of them thought he might have died of lobular pneumonia or fibrous neuritis. Another, that his death was probably caused by odema of the lungs, ulcerated collitis or myelitis.  There is, however, no contrariety of evidence as to the facts, that down to the time of his receiving the fall the decedent was apparently in perfect health; that immediately following the accident his body was found to contain various contusions, and his lower limbs paralyzed; and that but a day or two later he became a victim of pneumonia.  When to these facts is added the weight and effect to be given the testimony of various witnesses, several of them medical experts, that the paralysis, pneumonia and his death cannot be reasonably attributable to any other cause than the injuries he sustained in the fall in the apartment house, we can readily understand how the jury arrived at the conclusion expressed in the  verdict returned by them.  In other words, the evidence strongly conduced to prove that the accident and consequent injuries resulting to the decedent constituted the proximate cause of his death.

It follows from the conclusion we have expressed as to the weight and effect of the evidence, that the ruling of the trial court in the matter of refusing the peremptory instruction for a directed verdict, asked by appellant, was not error.  The instructions given by the court are in form like those approved by us in Travelers Insurance Company v. Davies, 152 Ky. 600, and, in substance, advised the jury that if they believed, from the evidence, the decedent lost his life directly and independently of all  other causes from bodily injury effected accidentally and by external and violent means resulting from his fall down the stairway, they should find for appellee, but unless they so believed they should find for the appellant.  Furthermore, that if they believed from the evidence the fall produced bodily injur-

ies which directly and independently of all other causes produced pneumonia, and that the pneumonia directly and independently of all other causes produced the death of the decedent, then the law was for the appellee and the jury should so find. But if they believed from the evidence that the death of the decedent was caused by pneumonia or other disease which resulted from natural causes, or other cause independent of any bodily injuries, if any, which may have been sustained by decedent in his fall, then the law was for the appellant and they should so find. As the instructions fairly and correctly stated the law there is no merit in the objections urged to them by appellant's counsel.

Appellant's remaining contention that the trial court erred in refusing to admit as testimony the record of the decedent's condition kept by the interne, Dr. Livesay, during his stay in the city hospital, is equally without merit. Under the rules of evidence a hospital record containing remarks regarding a patient, entered thereon by a nurse or interne, is not competent evidence to prove the facts stated. Such facts must be shown by them as witnesses. It is mere private memoranda and can be used only by the party who made it, to refresh his recollection in testifying.

As the record appears to be free of reversible error, the judgment is affirmed.