Eloise HUMBLE, Administratrix of the Estate of James Delbert Humble, Plaintiff-Appellee,

v.

MOUNTAIN STATE CONSTRUCTION COMPANY and William Woodrow Hoylman, Jr., Defendants-Appellants.

No. 20680.

United States Court of Appeals, Sixth Circuit.

April 26, 1971.

---

David O. Welch, Ashland, Ky., for defendants-appellants; David O. Welch, Lowell T. Hughes, Caldwell, Vanantwerp, Welch & Hughes, Ashland, Ky., on brief.

Clarence B. Creech, Ashland, Ky., for plaintiff-appellee; Creech & Hogg, Ashland, Ky., on brief.

Before PECK, BROOKS and KENT, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This action seeking recovery under the Kentucky Wrongful Death Act (K.R.S. 411.130(6)) was brought by the widow and administratrix of the estate of James Delbert Humble, deceased, who was killed in a traffic mishap involving a tractor-trailer truck owned by defendant-appellant Mountain State Construction Company and driven by defendant-appellant William Woodrow Hoylman, Jr. Jurisdiction of the District Court, following removal from state court, was based on diversity of citizenship; Kentucky law controls. From judgment entered on a jury verdict for $100,000, this appeal was taken.

Although sharply controverted issues of liability and damages were raised at trial, the underlying facts are not in dispute. The decedent was instantly crushed to death when a large 1,200 pound anvil head, which was being transported on the open, flat-bed trailer-truck, flew off the truck. It crashed through the windshield of his Volkswagen just as the two vehicles were passing each other, traveling in opposite directions, on a two lane highway in Boyd County, Kentucky. At the time of his death the decedent was forty-two years of age and had a life expectancy of thirty-two years. He was well developed physically and of average size and weight, and although he had only an eighth grade education, he was described as alert and intelligent.

No issue of liability is raised on appeal. The principal issue here is the propriety of the $100,000 verdict in light of the similarly undisputed facts that, at the time of his death, decedent had a history of alcoholism which affected his earning capacity and that, for the eight years prior to his death, his average annual earnings approximated only $2,840. Before discussing this principal issue, however, we turn briefly to the other issues on appeal, namely, the correctness of the District Court's rulings governing certain pretrial discovery proceedings and excluding at trial certain of the defendants' proffered items of evidence.

After its removal to the District Court, the case was set, in October, 1969, for trial on February 16, 1970. Shortly thereafter the defendants initiated discovery proceedings by submitting written interrogatories to the plaintiff which, among other things, sought such basic information as the names of the decedent's employers for the ten years prior to his death, the types of work in which he engaged during those years, and copies of his federal income tax returns for those years. The defend-

ants also asked whether the decedent had ever been treated for any illness, injury or other condition such as narcotic addiction or alcoholism. Plaintiff's initial responses to these interrogatories were in many ways inadequate and unresponsive. Pursuant to Rule 37, F.R.Civ.P., the defendants moved the District Court to require the plaintiff to fully answer all of the questions. Before a hearing on the motion could be held, the plaintiff filed two additional sets of answers, and, upon consideration of all the answers filed, the District Court subsequently overruled both defendants' motion for an order requiring "full and adequate" answers and their motion for a continuance because of the plaintiff's failure to provide such answers. Immediately thereafter, pursuant to proper notice, the defendants took the plaintiff's deposition upon oral examination. Again the plaintiff resisted even the most elementary questions, such as those concerning the decedent's height and weight and his physical condition and work record, on the ground that the information was protected against disclosure by the confidential communication privilege of the marital relationship. Again the defendants objected to the plaintiff's refusal to answer and moved for a continuance because of the plaintiff's conduct. Following a hearing on February 16, 1970, the day on which the case was set for trial, the motions were denied, because of the Court's crowded docket and the District Judge's conclusion that the defendants had not used full diligence in taking the plaintiff's deposition, and the case proceeded to trial as set.

Defendants contend that the District Court's failure to order the plaintiff to satisfactorily answer all of the questions put to her in the discovery proceedings, and the District Court's denial of a continuance because of the plaintiff's failure to answer to the defendant's satisfaction, constituted an abuse of discretion of such seriousness as to require reversal and remand of the case.

■■ At the outset we record that the plaintiff's conduct with respect to both the written and oral question propounded to her was far from commendable and at least to some extent thwarted the purposes of the discovery rules. While, considered charitably, the answers to the written interrogatories may be read as not having been deliberately evasive, the plaintiff clearly failed to make any reasonable attempt to provide the information sought. Furthermore, the basis of plaintiff's refusal to answer many of the questions put to her upon the taking of her deposition undoubtedly was, as characterized by the District Court, "specious" at best. The measure of compensatory damages for wrongful death in Kentucky is the loss to the decedent's estate caused by the destruction of his earning power. E. g., Willingham v. Stevens, 312 Ky. 124, 226 S.W.2d 770 (1950); Spangler's Adm'r v. City of Middlesboro, 301 Ky. 237, 191 S.W.2d 414 (1945); Cuniffe's Ex'x v. Johnson, 279 Ky. 663, 132 S.W. 2d 47 (1939); West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S.W.2d 479 (1930). In making a determination of the appropriate measure of damages, the jury is mandated to focus upon the decedent's earning capacity, his estimated life expectancy and take into consideration his habits, character, physical and mental condition. See Wilkins v. Hopkins, 278 Ky. 280, 128 S.W.2d 772 (1939); Cincinnati, N.O. & T.P. Ry. v. Lovell's Adm'r, 141 Ky. 249, 132 S.W. 569 (1910). Whether or not defendant's efforts to discover those relevant facts were hindered by the plaintiff's responses to the discovery processes, review of the record shows that they were able to set forth before the jury sufficient facts concerning the nature of the loss to the decedent's estate to enable the jury to determine that loss. The jurors had before them the decedent's age, his life expectancy, and his average annual earnings for the ten years prior to his death. In addition the jury was presented with sub-

stantial evidence of the decedent's character and habits, including the very significant fact that he had been diagnosed and treated by competent medical authority for addiction to alcohol. What further information the defendants would have presented to the jury is not disclosed. Accordingly we find no substantial prejudice to the defendants in the District Court's rulings and hold that the rulings did not constitute an abuse of discretion.

The next issue concerns the admissibility of certain records of the Appalachian Comprehensive Care Center, Ashland, Kentucky, a community mental health facility licensed by the Kentucky Department of Mental Health. These showed, among other things, that the decedent received treatment for alcoholism in late 1968 and early 1969. The District Court ruled the records inadmissible under K.R.S. 210.235. That section prohibits disclosure of records of the Kentucky Department of Mental Health unless a court makes a determination that "disclosure is necessary for the conduct of proceedings before it and failure to make such disclosure would be contrary to the public interest." K.R.S. 210.235(4). The District Court's alternative reason for denying admission to the documents was that the records were prepared by social workers at the Center rather than by medical doctors or psychiatrists. Defendants contend that denial of admission of those records caused substantial prejudice to their position, as evidenced, they contend, by the amount of the verdict rendered against them.

The admissibility of the records in light of K.R.S. 210.235 presents a novel question. There appear to be no Kentucky cases involving the question of whether the records of such community facilities are governed by the provisions of that statute since they are licensed by the Kentucky Department of Mental Health. Nor is it clear whether the records of such facilities are to be considered hospital records subject to the Kentucky rules of evidence relating to such records. If they are, it would appear that the District Court's alternative ground for excluding the records from evidence, i. e., because the records were prepared by non-medical personnel such as social workers, was sound. See National Life & Accident Ins. Co. v. Cox, 174 Ky. 683, 192 S.W. 636 (1917).

█ The most significant consideration in our view, however, is that the defendants suffered no prejudice by the District Court's exclusion of the records. One of the defendants' witnesses, Dr. Willard Dill, was the psychiatrist who had treated the decedent when he was hospitalized and diagnosed as an alcoholic at the Danville (Kentucky) State Hospital in July and August, 1967. Dr. Dill was also the director of the Appalachian Comprehensive Care Center and supervised the treatment of the decedent there in late 1968 and early 1969. Among other things Dr. Dill testified that the decedent had been diagnosed and treated as an alcoholic, that he engaged at times in periods of very heavy drinking and that his capacity to work was impaired at such times. These concededly constitute the most significant facts which the defendants wished to be placed before the jury in this regard. The records in question, even if otherwise admissible, would have been merely cumulative to the undoubtedly more persuasive live testimony of Dr. Dill. Accordingly, the District Court committed no reversible error in the exclusion of that evidence.

The third issue more directly concerns the amount of the jury's award of compensatory damages. The defendants contend that the District Court committed reversible error in refusing to instruct the jury that any award for future loss must be reduced to present value and in excluding from evidence annuity tables and testimony relating to present safe return on invested funds which would have permitted the jury to so reduce the award.

■ We note at the outset that the statutory scheme of recovery under many state wrongful death statutes, as well as that under certain federal statutes such as the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) and the Jones Act (46 U.S.C. § 688) which give a federal right of recovery for the wrongful death of certain classes of employees, limits recovery for wrongful death to the pecuniary loss occasioned by the decedent's death. It is almost uniformly held that an award of damages designed to compensate those dependent on the decedent for such future pecuniary loss must be reduced to present value in recognition of the earning power of the lump sum award. See e. g., Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Sleeman v. Chesapeake & Ohio Ry., 414 F.2d 305 (6th Cir. 1969); United States Steel Corporation v. Lamp, 436 F.2d 1256 (6th Cir. 1970); 22 Am.Jur.2d, Death, § 124. Kentucky, however, does not limit recovery for wrongful death to the pecuniary loss to named classes of persons dependent upon the deceased. Rather, as indicated above, the measure of recovery under the Kentucky Wrongful Death Act is the loss to the decedent's estate caused by the destruction of his earning power. Willingham v. Stevens, *supra*; Spangler's Adm'r v. City of Middlesboro, *supra;* Cuniffe's Ex'x v. Johnson, *supra;* West Kentucky Coal Co. v. Shoulders' Adm'r, *supra.* Moreover the Kentucky decisions emphasize the discretion of the jury in the determination of damages in death cases and recognize with approval the possible speculative nature of death case verdicts. Cuniffe's Ex'x v. Johnson, *supra*; Wilkins v. Hopkins, *supra*; West Kentucky Coal Co. v. Shoulders' Adm'r, *supra.* While the Kentucky decisions recognize that under a pecuniary loss standard of recovery, such as, for example, the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.), an award to compensate for future loss must be reduced to present value (see e. g., Chesapeake & Ohio Ry. v. Biliter, 413 S.W.2d 894 (Ky.Ct.App.1967)), no Kentucky decision to which we have been referred or which has been disclosed by our own research requires an award of damages under the Kentucky Wrongful Death Act to be reduced to present value. Accordingly, we concluded that the District Court committed no error in refusing to instruct the jury to reduce any award of compensatory damages to present value or in excluding evidence designed to enable the jury to so reduce the award.

The final issue, as indicated above, directly concerns the amount of the jury verdict. Specifically, the issue is whether the District Court committed an abuse of discretion in overruling the defendants' motion for a new trial on the ground that the award of $100,000 for compensatory damages was excessive.

■■ It is well settled that even in a case in which jurisdiction of the District Court is based on diversity of citizenship and in which the appropriate state law controls on all substantive questions, the granting or denial of a new trial on the ground of excessiveness of the verdict is within the discretion of the District Court. The District Court's determination in this regard will not be disturbed except for an abuse of discretion. Mooney v. Henderson Portion Pack Co., 339 F.2d 64 (6th Cir. 1964); Montgomery Ward & Co. v. Morris, 273 F.2d 452 (6th Cir. 1960); Spero-Nelson v. Brown, 175 F.2d 86 (6th Cir. 1949). However, while they are not controlling with respect to the question of whether the District Court abused its discretion in denying a motion for a new trial on the ground of excessiveness of the verdict, Kentucky decisions concerning the issue of excessive verdicts are instructive. It is clear from such decisions that a jury verdict will not be disturbed on the ground that the award is excessive or inadequate unless it is apparent that the verdict was the result of passion

or prejudice. Fisher Equipment Company v. West, 365 S.W.2d 319 (Ky.Ct. App.1962); Allender Company v. Browning's Adm'x, 242 Ky. 273, 46 S.W.2d 116 (1932); West Kentucky Coal Co. v. Shoulders' Adm'r, *supra*. Factually, the cases dwell upon the decedent's earning capacity and life expectancy, and in no case in which the sum awarded fell within the decedent's reasonable lifetime earnings was the verdict held to be excessive. *E. g.*, Fisher Equipment Company v. West, *supra;* McCoy v. Carter, 323 S.W.2d 210 (Ky.Ct.App.1959); Temperly v. Sarrington's Adm'r, 293 S.W.2d 863 (Ky.Ct.App.1956); Allender Company v. Browning's Adm'x, *supra*.

Defendants' contention that the $100,000 verdict was the result of passion and prejudice interjected into the proceedings by, among other things, the plaintiff's unsuccessful claim for damages for pain and suffering undergone by her decedent prior to his death which required a detailed examination of the shocking circumstances of his death has superficial appeal. The countervailing factors are, however, that there was competent evidence submitted to the jury which showed that, despite his low average earnings for the ten year period prior to his death, the decedent in 1966 earned over $4,000 and over $4,500 in 1962. Stressing again that under Kentucky law the jury, in determining the loss to the decedent's estate by reason of the destruction of his earning power, was not limited to a consideration of the decedent's average annual earnings nor his highest yearly earnings, it must be noted that a verdict of $100,000 is well within the limits of the decedent's reasonable potential lifetime earnings. Accordingly, it is unlikely that the Kentucky appellate courts would have ordered a new trial on the grounds of an excessive verdict, and it is clear that the District Court's denial of a new trial on that ground did not constitute an abuse of discretion.

The judgment of the District Court is affirmed.