**PADUCAH AREA PUBLIC LIBRARY**
**Board of Trustees of Paducah Public**
**Library, Geraldine Reed, Appellants,**

v.

**Cynthia TERRY, Appellee.**

Court of Appeals of Kentucky.

June 10, 1983.

William O. Guethlein, William P. Swain, Boehl Stopher Graves & Deindoerfer, Louisville, for appellants.

Larry B. Franklin, Louisville, and Charles R. Geveden, Wickliffe, for appellee Terry.

Before HAYES, C.J., and MILLER and PAXTON, JJ.

MILLER, Judge.

This appeal involves a judgment for personal injuries suffered in an automobile accident on U.S. Highway 60 in McCracken County, Kentucky, on October 13, 1972. Appellee Cynthia Terry, age 12, was a passenger in an eastbound station wagon vehicle driven by her mother Barbara Jo Terry. Appellant Geraldine Reed was driving west in a bookmobile vehicle owned by her employer, Paducah Area Public Library. It was raining. The bookmobile was following a certain "white car." It is disputed as to how close the bookmobile was to the "white car." The "white car" slowed suddenly and appeared to stop abruptly. It is disputed as to how suddenly it slowed and how abruptly it attempted to stop. However, the "white car" was not physically involved in the accident and apparently proceeded from the scene without evidence of its identity. In response to the "white car's" slowing or stopping, the overtaking bookmobile vehicle left the right-hand side of the pavement. Apparently some or all the wheels were braked. Some or all the vehicle's wheels traveled a distance of 173 feet while off the pavement. Its course was then corrected, and the vehicle was brought back upon the pavement thereafter crossing into the opposite traffic lane, striking the oncoming station wagon in which plaintiff was a passenger. The station wagon was at all times within its proper traffic lane.

We believe there is no need to describe plaintiff's injuries other than to acknowledge that her injuries were many, severe and permanent, leaving her, in addition to other lasting effects, with a "plastic plate" in her cranium.

On February 29, 1979, plaintiff filed suit against appellants, City of Paducah, Paducah Area Public Library, Board of Trustees of Paducah Public Library and Geraldine Reed. City of Paducah was granted summary judgment. No cross appeal having been filed and the record containing no cross-claim against the city, this matter is not subject to review. Summary judgment for the City of Paducah must therefore stand.

A trial was held commencing on October 19, 1981. Plaintiff was granted a directed verdict against appellants Paducah Area Public Library, Board of Trustees of Paducah Public Library and Geraldine Reed and the matter was submitted to the jury for consideration of damages. The jury returned a verdict for plaintiff against Paducah Area Public Library, Board of Trustees of Paducah Public Library and Geraldine

Reed for (1) medical expense, $7,673.77; (2) permanent impairment of her power to earn money, $475,782.80; and (3) mental and physical suffering, $500,000.00, or a total of $983,456.57. The appellants argue: (1) the directed verdict was improper (that trial court erred in failing to submit the question of liability to the jury with a sudden emergency instruction); (2) error in admission of inflammatory photographs of appellee showing her injuries immediately after the accident; (3) the award of damages is excessive; (4) error in refusing to instruct the jury that any award was not subject to Federal and State Income Tax, and (5) error in refusing to reduce the damage award to present worth.

We find no error in directing a verdict on the question of liability. When a vehicle is struck in its own traffic lane, the vehicle in the wrong or improper lane is presumptively at fault. There are situations where one's presence in the wrong lane can be excused as a matter of law but they are rare, indeed. There are also situations where one's negligence in being in the wrong lane may be weighed by the jury under a "sudden emergency" instruction, but this succor to a defendant does not exist where his presence in the wrong lane is brought about by his own negligence, or where the situation causing his departure from the correct lane could reasonably have been anticipated. Here, appellant Geraldine Reed followed the "white car" toward a "caution" intersection. The pavement was wet. The "white car" slowed or stopped. Appellant was in such proximity that she lost control of her own vehicle ultimately crossing into the wrong lane causing the accident. We believe she was not entitled to have her case submitted to the jury for consideration under the doctrine of sudden emergency. *See Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973), and *Brown v. Wilson*, Ky., 401 S.W.2d 77 (1966). Indeed it may be said that all automobile accidents are sudden in a literal sense. But such is not the test. This distinction is set out in *Harris, supra.*

We do not find the admission of appellee's photographs taken soon after the accident to have been prejudicial. Appellants complain of the admission of two photographs of appellee after she was prepared for initial surgery. They term these "gruesome" and maintain they inflamed the jury. Appellants cite *Haddad v. Kuriger*, Ky., 437 S.W.2d 524 (1969), and *Freeman v. Oliver M. Elam, Jr. Company*, Ky., 372 S.W.2d 796 (1963). *Haddad* held the photographs to be erroneously admitted for reason they appeared distorted. It was said they were so extremely "close-up" as to present a distorted perspective. *Freeman* was a death case where the photographs depicted the decedent being "buried alive." The rejection by the trial court was upheld as the photographs would serve no useful purpose and would probably inflame the jury. We believe the authorities are distinguishable from the case at hand. In a death case such as *Freeman* the photographs of decedent indeed serve no useful purpose in the jury's weighing the extent of the injuries. The injuries are the maximum. Death requires no measurement. Absent an allegation for pain and suffering before death occurs photographs of decedent serve no valid purpose. In *Freeman* there was no attempt to prove pain and suffering before death. In *Haddad* the photographs were considered distorted. Such photographs, like any other distorted documentary evidence, are not admissible.

In the case at hand, where the injuries had been sustained some nine years before trial and the appellee had grown from age twelve into adulthood, we believe the undistorted photographs were of significant probative value. They aided the jury in determining the extent of the injuries and the degree of pain and suffering. This is true even though the record contained other evidence depicting the nature and extent of the injuries as in *Freeman* and *Haddad.* We believe the photographs admitted were more probative of the issues involved than prejudicial to the appellants.

Next appellants contend the damage award was excessive. They buttress their argument upon the court's refusal to re-

quire that any portion of the award be reduced to "present worth" and the refusal of the court to advise the jury that any award was free of Federal and State income tax. This contention presents a serious problem, but we are unable to conclude that the award was excessive. To be sure the appellee was terribly injured. Her obvious suffering, past and future, can hardly be exaggerated. Further, her injury at age twelve is to be borne essentially a life's span. We are called upon to determine whether the jury had at its disposal the proper ingredients for fair and proper consideration in fixing the award. Appellants argue that certain ingredients were omitted; appellee argues to the contrary.

■ Here we should observe that under our system the emphasis is not upon retribution but compensation. 22 Am.Jur.2d *Damages* § 12 (1965). The object of tort law is to, so far as possible with money, place the injured party in the position he would have been if no tort had been committed. It is to provide full recompense but nothing more. *See Western Union Telegraph Co. v. Guard,* 283 Ky. 187, 139 S.W.2d 722 (1940). All cases are to be tried toward these ends. The law recognizes the fundamental importance of the ability to earn, and therefore mandates that impairment of earning power shall be fully compensated. Likewise, the ability to live free of pain and suffering is essential to a meaningful life. If freedom from pain is lost through tortious injury, the law provides full compensation. In neither case, however, does the law provide a profit. To provide for full compensation for the tort victims and at the same time guard against oppressive retribution against wrongdoers is a salient objective of the trial court.

■ Appellee properly proved her damages by expert testimony tending to establish a diminished earning capacity projected over her work-life expectancy. *See Adams v. Davis,* Ky.App., 578 S.W.2d 899 (1979). In an *in camera* hearing before calling his economic expert, Dr. James L. Altman, appellee's counsel stated his objection, *inter alia,* to any attempt by appellant to show

(1) income tax impact or (2) reduction to present worth. The trial court sustained appellee on both points. Here we should observe that both parties cited death cases as well as injury cases to support their positions. Under Kentucky law there is no difference in computing earnings lost in injury and death. Death is the ultimate injury. It is the total destruction of power to earn. In either death or injury it is the destruction of power to earn money that constitutes the damage.

■ We believe the trial court was correct in excluding evidence of tax impact on the basis of *Louisville & Nashville Railroad Co. v. Mattingly,* Ky., 318 S.W.2d 844 (1958). The statement contained in *Mattingly* excluding tax information may have been *dicta* as urged by appellant, but it is nevertheless sound. Nor, are we prone to adopt the rule exemplified by the United States Supreme Court in *Norfolk and Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). (Case under Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (1981)). It may be true as indicated in *Liepelt* that jurors are "tax conscious" and may overly award the plaintiff in anticipation of tax impact, but this is a matter that will have to be dealt with by the trial judge in reviewing the size of the verdict. CR 59.01(d). To inject the incidence of the ever changing tax scheme, federal or state, into a jury damage trial would lead the jury into a hopeless quagmire of confusion and conjecture. Since our test is one's destroyed power to earn money, matters such as marital status and personal consumption items such as debts, insurance (savings), and general living expenses have been held irrelevant. We think it logically follows that a tax debt to the government is also irrelevant. We believe this rule is supported by sound reasoning and ample authority. 22 Am.Jur.2d, *Damages* § 88 and *Death* § 154 (1965). There appears to be no reason for abating damages in favor of a wrongdoer by deducting tax payments solely for his benefit. Further, taxes are in a sense elements of personal consumption which are to be exclud-

ed. *See Charlton v. Jacobs,* Ky.App., 619 S.W.2d 498 (1981). We hold that in personal injury actions such as the case at hand the tax liability of claimant is not relevant to the case. It can neither be inquired into on cross-examination or submitted to the jury for consideration in making the award. In this regard the ruling of the trial court is correct.

The appellants next contend that the trial court erred in refusing to permit evidence of present worth and in refusing to instruct the jury that any award of future damage must be in present worth. Pursuant to the *in camera* ruling, appellants were neither allowed to cross-examine appellee's expert economist, Dr. James L. Altman, nor to otherwise demonstrate to the jury that any award should be in present worth. We are well aware of the rule, almost universally applied, in Federal Employers' Liability cases, (45 U.S.C. § 51 *et seq.* (1981)), and Jones Act cases, (46 U.S.C. § 688 (1979)), that awards for future loss of income must be reduced to their present worth. Evidence is received with this objective in mind. The defendant, if plaintiff fails to do so, may adduce his own proof on present value by direct evidence or by cross-examination. The jury is instructed that their award shall be in present worth, but the present worth rule does not apply to any award for pain and suffering. *See Louisville & Nashville Railroad Company v. Gayle,* 204 Ky. 142, 263 S.W. 763 (1924), and *Chesapeake & Ohio Railroad Company v. Kelly,* 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916).

In this state the traditional method of determining damages for permanent injury is to instruct the jury to fairly and reasonably compensate plaintiff for impairment of power to earn money. *See Caton v. McGill,* Ky., 488 S.W.2d 345 (1972), and *Middlesboro Coca-Cola Bottling Works v. Ball,* 262 Ky. 101, 89 S.W.2d 875 (1936). In cases of death it is the destruction of decedent's power to earn money. *See Roland v. Beckham,* Ky., 408 S.W.2d 628 (1966). We find no Kentucky case nor have we been directed to any other than those cases under the Federal Employers' Liability Act to suggest that the jury should be instructed to reduce an award to present worth.

We are aware of *Humble v. Mountain State Construction Company,* 441 F.2d 816 (6th Cir.1971), a decision wherein the Sixth Circuit Court of Appeals stated that Kentucky law does not require that the jury be instructed to reduce projected lost earnings to their present worth, and that it is not error to exclude evidence designed to enable the jury to reduce the award. And, we are further aware of *West Kentucky Coal Company v. Shoulder's Adm'r.,* 234 Ky. 427, 28 S.W.2d 479 (1930), decided before *Humble* which did not rule on the precise question facing this Court but nevertheless indicated that an award (in a death case) should be in present worth, in that present worth was considered by the court in determining whether the award was excessive. Although this court is not bound by the Federal precedent of *Humble* [*Embs v. Pepsi-Cola Bottling Company of Lexington, Kentucky, Inc.,* Ky., 528 S.W.2d 703 (1975)] we do not deem that opinion as holding an award shall not be in present worth. Rather, the *Humble* court was concerned with the proof to be heard by the finders of fact and the instructions to guide them. The court simply said that under Kentucky law, as viewed by the Court, a Court need not permit the jury to hear proof of present value and no instruction of present value need be rendered.

Our examination of the law of this state, as well as the law of other states, leads us to believe that the universal rule requires that awards for lost future earnings be in present worth. 22 Am.Jur.2d *Damages* § 96 and *Death* § 124 (1965); 25 C.J.S. *Damages* § 87 (1966); *Shoulders, supra.* Any other rule may tend to overcompensate. It may turn injury into profit, a result forbidden under our sense of justice. We believe that Kentucky cases have, in fact, been tried upon this basis. Plaintiffs have generally reduced their claims by directing their own evidence toward present worth or defendants have shown a reduction by cross-examination. The jurors have

then, whether instructed or not, presumptively measured their award in present worth. On appeal, the appellate court has considered excessiveness with an eye on the interest earning capacity of the award (*Shoulders, supra*) as well as the probable decrease (future inflation) in purchasing power of the award. *See Hedges v. Neace,* Ky., 307 S.W.2d 564 (1957). Beyond the scope of judicial decisions, the rule requiring awards to be in present worth has enormous support. *Restatement (Second) of Torts* § 913 A (1982); 25 C.J.S. *Damages* § 87 (1966); 22 Am.Jur.2d *Damages* § 96 (1965); 2 F. Harper and F. James, *Law of Torts* § 25.8 (1956); C. McCormick, *Handbook on the Law of Damages* § 86 (1935); D. Dobbs, *Remedies* § 8.7 (1973). As we have indicated, the rule applied in F.E.L.A. and Jones Act cases does not require a reduction of future pain and suffering to present worth. The reasoning is that pain and suffering has "no market place." It is left to the judgment of the jury to fix a gross award based upon the evidence and their own human experience. 22 Am.Jur.2d *Damages* § 108 (1965). We believe this is a sound rule notwithstanding the rule in this state that pain and suffering may be demonstrated to the jury by a *per diem* argument of counsel. *See Louisville & Nashville Railroad Company v. Mattingly,* Ky., 339 S.W.2d 155 (1960).

From the foregoing we conclude the rule to be substantially universal that any award for future lost wages must ultimately be viewed in present worth. Whether the jury as fact finders reduces the award in the first instance based upon evidence of an appropriate rate of interest, or whether the Court considers present value in determining excessiveness, there is no clear rule. In the case, *sub judice,* the trial judge excluded evidence of present worth and declined to instruct the jury to consider same. The learned judge based his decision upon simultaneous exclusion of all evidence relative to "future inflation." Apparently he concluded that present worth and future inflation are related and that the two factors "offset" each other. We believe he acted properly. We believe jurors are suffi-

ciently sophisticated in considering future lost wages to understand that "a smaller sum today equals a larger sum in the future." Further, jurors are inescapably aware that any award for future damages is likely to suffer the erosion of inflation. It requires no evidence of discount rates or the rate of inflation for the jury to render a fair and reasonable award for future losses. Nor, is it necessary to instruct the jury on present worth. The jury's knowledge of these factors is presumed. The value of prepaying money, as well as the erosion caused by inflation, are matters within the general knowledge of jurors. Much can be said for the rule of the trial judge, and much may be said against it, but suffice it to say that such a rule goes far to eliminate the contest between litigants who have the resources to marshall mountains of expert testimony relative to money, its worth and the nebulous art of economic forecasting, all of which encumber the trial proceedings and confuse the deliberation of jurors. Further, this rule eliminates the anomaly created by reducing future lost earnings to present worth but refusing to reduce future pain and suffering awards.

■ We adopt the reasoning that the relationship of interest rates and rates of inflation are "self-adjusting" and it is unnecessary to concern the jury with either. Because the two totally offset each other, the jury may make a fair and reasonable award in present worth without introduction of evidence or instruction. The injection of such matters in the trial is not prejudicial but irrelevant and non-essential; all however within the discretion of the trial court.

Over 70 years passed since the Court of Appeals in *Cincinnati, N.O. & T.P.R. Ry. Co. v. Lovell's Adm'r.,* 141 Ky. 249, 132 S.W. 569, 574 and 575 (1910) stated:

When the jury has before it all the evidence that either party desires to introduce, relating to the health, habits, earning capacity, character, and probable duration of life of the deceased, and are then directed to assess the damages at

**26**

such a sum as will compensate his estate for the destruction of his power to earn money, they have before them every fact upon which an estimate of the loss sustained can be based, and it is to be presumed that in making up their verdict the jury will take into consideration all of the facts indicated.

We believe the utterance in *Lovell's Adm'r.* to be as sound today as then and perhaps more so as jurors are presumably more cognizant of money, interest and inflation. We are also influenced by what we believe to be an expanding recognition of the total offset rule. *See Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916 (Alaska 1977); *Morrison v. State,* 516 P.2d 402 (Alaska 1973); *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967); *Schnebly v. Baker,* 217 N.W.2d 708 (Iowa 1974); *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027, 21 A.L.R. 4th 1 (1980); *Doca v. Marina Mercante Nicaraguense, S.A.,* 634 F.2d 30 (2 Cir.1980); *Macey v. United States of America,* 454 F.Supp. 684 (D.Alaska 1978); *Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300 (1976) (Wisdom, J., concurring, 308–313) (Property Damage); and Note, *Future Inflation, Prospective Damages and the Circuit Courts,* 63 Va.L.Rev. 105 (1977); Annot., 21 A.L.R. 4th 21 (1983).

 Based upon the foregoing, we believe the trial judge was correct in excluding evidence regarding both discount rate and inflation and that the jury was able to reach a fair and reasonable present worth award in the absence of such evidence.

The judgment is affirmed.

All concur.