805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John MAXEY, Plaintiff-Appellant,
v.
REYNOLDS METALS COMPANY, Defendant-Appellee.
 No. 85-5778.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1986.
 
 Before WELLFORD, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant John Maxey appeals from the summary judgment of the district court denying his claim of discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e; the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981, and K.R.S. Sec. 344.040. Having concluded that no genuine issue of material fact exists as to disparate treatment, we affirm.
 
 I.
 
 2
 Plaintiff was employed as a pipe fitter at Reynolds Metals Company from June 6, 1977, to December 18, 1980. His employment record was certainly less than exemplary. As summarized in the affidavit of John Zannoni, Reynolds' personnel manager, Maxey's record was:
 
 
 3
 replete with numerous warnings regarding various violations of company policies. Specifically, he was warned on December 19, 1977 for an unreported absence; on January 3, 1978, he received a letter of concern regarding tardiness and absenteeism; on May 12, 1978 he received a letter of concern regarding tardiness and absenteeism; on February 5, 1979, he received a verbal warning regarding tardiness and absenteeism; on February 26, 1979, he received a verbal warning regarding tardiness and absenteeism; on May 23, 1979, he received a labor complaint slip regarding tardiness and absenteeism, designated as a second warning; on June 4, 1979, he received a verbal warning regarding tardiness and absenteeism, which was designated as a third warning; on August 9, 1979, he received a verbal warning regarding tardiness and absenteeism; on August 11, 1979, he received a verbal warning regarding changing clothes on company time, in violation of company policy; on August 14, 1979, he received a verbal warning of suspension if he was found in the pipeshop again with the lights out; on December 19, 1979, he received a labor complaint slip regarding tardiness and absenteeism, which was given in lieu of a three-day suspension; and, on February 29, 1980, he received a notice of a one-day disciplinary layoff for leaving the plant without his supervisor's permission, and a warning was given regarding the same. On December 11, 1980, a meeting was held between Maxey, Brad Tate, a supervisor, and a union representative regarding Maxey's refusal to answer pages. In December of 1980, Maxey received several warnings from Tate regarding lights being off while he was within the pipeshop. Also in December of 1980, he received a warning from Bob Fawver, supervisor, regarding locking the door and turning out the lights in the pipeshop. Finally, on December 15, 1980, he was suspended for the purpose of termination when he was found again in the pipeshop with the door locked and the lights out, and this time was actually caught asleep. On December 17, 1980, his employment was terminated.
 
 
 4
 Although it appears that plaintiff's entire record was considered in making the determination to terminate his employment, the precipitating event clearly was the sleeping incident. The district court summarized the events of December 17, 1980, as follows:
 
 
 5
 At about 3:35 a.m. on December , 1980, plaintiff's supervisor Tate tried to reach him by paging him for about 15 minutes. Unable to locate plaintiff by paging, Tate went to the pipefitters' shop. He found the door locked and the lights out. Tate unlocked the door, entered the shop and turned on the lights. He found plaintiff asleep on the bench with his jacket rolled up under his head to form a pillow. Plaintiff did not wake up and Tate left to call the night superintendent Fawver. Fawver and Tate returned to the pipefitters' shop where they found plaintiff still asleep. Although the light was on and Tate and Fawver were talking, plaintiff did not wake up until Tate shook his shoulder. Tate told plaintiff that he was suspended for sleeping on the job, and on December plaintiff was terminated.
 
 
 6
 Plaintiff sought reinstatement through the grievance procedure established by his union's collective bargaining agreement. The grievance was denied by the arbitrator, and plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). He was issued a right to sue letter on October 16, 1981. On December 10, 1981, he commenced this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e; the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981; and K.R.S. Sec. 344.040.
 
 
 7
 On July 6, 1983, defendant filed a motion for summary judgment contending that no genuine issue of material fact existed in the controversy and that Reynolds was entitled to judgment as a matter of law under Fed.R.Civ.P. 56. In support of its motion, defendant produced the affidavit of John Zannoni, Reynolds' personnel manager. Zannoni summarized the employment records of all Reynolds employees in Jefferson County who had been disciplined for sleeping on the job.
 
 
 8
 The summary indicates that nine other employees were disciplined for sleeping on the job. One white employee, Jefferies, was discharged for sleeping. Jefferies was a supervisory employee and not a member of the bargaining unit; therefore, his record was disregarded by the district court. Two other white employees were discharged, but their discharges were converted to suspension after union intervention. One black employee was terminated, but his discharge was also converted to suspension after union intervention. Three white employees and one black employee were suspended for sleeping. One black employee was suspended the first time he was caught sleeping on the job and terminated the second time.
 
 
 9
 Defendant argued that the disciplinary measures were fashioned on an individual basis and that plaintiff's claim of disparate treatment could not withstand scrutiny. Plaintiff disagreed with defendant's characterization of his co-employees' work records, contending that his was "exemplary" when compared with those of white employees who had been disciplined for sleeping.
 
 
 10
 The district court assumed, without deciding, that plaintiff had established a prima facie case under the standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). The court also determined that Reynolds had articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Consequently, the district court progressed to the third step of the McDonnell Douglas test and concluded that plaintiff had not established pretext. Concluding that "[p]laintiff's assertion of disparate treatment simply will not withstand scrutiny," the district court granted defendant's motion for summary judgment.
 
 
 11
 In this appeal, plaintiff presents two issues for our consideration:
 
 
 12
 (A) Whether the district court erred by limiting discovery to the records of those employees caught sleeping on the job.
 
 
 13
 (B) Whether the district court erred by concluding that no genuine issue of material fact existed in this controversy, and that defendant is entitled to judgment as a matter of law.
 
 II.
 A.
 
 14
 As a preliminary matter, plaintiff contends that the district court erred in limiting discovery to the employment records of Reynolds employees who were caught sleeping on the job. The standard of review of a final decision involving disputes over the proper scope of discovery is abuse of discretion. See Humble v. Mountain State Construction Co., 441 F.2d 816, 818-19 (6th Cir.1971). "A district court has very wide discretion in handling pretrial discovery and we are most unlikely to fault its judgment unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir.1977). In the instant case, the district court limited discovery to the records of other Reynolds employees whose discipline was precipitated by a sleeping incident. Accordingly, we hold that the court acted within the range of sound discretion by limiting discovery to the records of employees situated similarly to plaintiff.
 
 B.
 
 15
 In order for summary judgment to be an appropriate remedy, the moving party must establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Because civil rights actions involve important issues of intent and motivation, summary judgment in such cases is disfavored. See, e.g., Leonard v. City of Frankfort Electric and Water Plant Board, 752 F.2d 189, 194 (6th Cir.1985); Equal Employment Opportunity Commission v. Southwest Texas Methodist Hospital, 606 F.2d 63 (5th Cir.1979) (per curiam), cert. denied, 445 U.S. 928, 100 S.Ct. 1314 (1980). See generally 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2732.2 (1983). Nevertheless, "[w]hile summary judgment often is inappropriate to dispose of cases involving issues of intent and motive, the moving party has the right to judgment without the expense of a trial when there are no issues of fact left for the trier of fact to determine." Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982).
 
 
 16
 The Supreme Court has established a three-step analysis for claims of disparate treatment under Title VII. In McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S.Ct. at 1824, the Court determined that the plaintiff bears the initial burden of establishing a prima facie case of discrimination.
 
 
 17
 This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 18
 Id. See Draper v. Smith Tool & Engineering Co., 728 F.2d 256 (6th Cir.1984). Once a prima facie case has been established, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). Once a nondiscriminatory reason has been articulated, the plaintiff must establish that the articulated reason is a pretext. McDonnell Douglas at 804, 93 S.Ct. at 1825. "[T]he plaintiff at all times carries the ultimate burden of proving racial discrimination. Even though the burden of going forward with the evidence may shift between the plaintiff and the defendant, the burden of persuasion always remains with the plaintiff." Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 375 (6th Cir.1984). This analysis may also be used to evaluate plaintiff's claim under 42 U.S.C. Sec. 1981. Id. at 378.
 
 
 19
 Application of the McDonnell Douglas standard "was never intended to be rigid, mechanized, or ritualistic." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949 (1978). Rather, "this standard provides an analytical framework which should be modified to accommodate different employment discrimination contexts." Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985).
 
 
 20
 The instant case differs from McDonnell Douglas in that McDonnell Douglas involved discriminatory hiring decisions, whereas the instant case involves allegations of discriminatory discipline. In Moore v. City of Charlotte, 754 F.2d 1100 (4th Cir.), cert. denied, 105 S.Ct. 3489 (1985), the Fourth Circuit applied the rationale of McDonnell Douglas to a case involving discriminatory discipline and concluded that a prima facie case is established "upon a showing (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Id. at 1105-06. See Potter v. Goodwill Industries, 518 F.2d 864, 865 (6th Cir.1975) (per curiam) (prima facie case of discriminatory employment conditions established by showing that plaintiff "is a member of a class entitled to the protection of Title VII, and that he is accorded treatment different from that accorded persons otherwise similarly situated who are not members of the class.").
 
 
 21
 The central inquiry of a disparate treatment analysis is whether the plaintiff is treated differently from others who are similarly situated. Furthermore, "[d]ifferent treatment does not constitute disparate treatment absent evidence of a disparate comparison to a similarly situated coworker or evidence supporting an allegation of illegitimate reasons for the employer's actions." Murray, 770 F.2d at 69.
 
 
 22
 Examination of the employment records of other Reynolds employees caught sleeping on the job indicates plaintiff's contention that he was treated differently from those who were similarly situated is without foundation. Only two white employees who were given lesser penalties for sleeping had records even arguably as bad as plaintiff's. Mitchell was suspended for sleeping on the job, but he had been cited fewer times than plaintiff for disciplinary violations prior to his sleeping incident. Schmidt had been warned on several occasions about his unsatisfactory attendance records. As of April 1, 1980, he had missed 88 days in a nine-month period. In addition, he had been disciplined for falsifying company records and for harassing another employee. However, the lesser penalty was justified on the ground that reliable evidence indicated he was ill and that he had fallen asleep unintentionally.
 
 
 23
 Plaintiff alleges that he also fell asleep unintentionally. However, the facts simply do not support this contention. Plaintiff was found in the pipe shop with the lights out, his feet propped up, the door locked, and his jacket rolled up under his head as a pillow.[1]
 
 
 24
 Moreover, plaintiff admitted that he had fallen asleep on previous occasions. Thus, by his own admission his record was as bad as that of Tony Clay, the only employee caught sleeping on the job twice. Clay was discharged after the second incident.
 
 
 25
 When considering the propriety of a grant of summary judgment, a court must, of course, evaluate the evidence in the light most favorable to the non-moving party. See, e.g., Lenz v. Erdmann Corp., 773 F.2d 62, 64-65 (6th Cir.1985) (per curiam); Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986, 100 S.Ct. 495 (1979). Having done so, we conclude that the district court did not err in granting defendant's motion for summary judgment.
 
 III.
 
 26
 Because no genuine issue of material fact exists as to disparate treatment in the instant case, the defendant is entitled to judgment as a matter of law. Accordingly, the decision of the district court granting defendant's motion for summary judgment is AFFIRMED.
 
 
 
 [1]
 Maxey contends that he had never been warned about keeping the door locked and that the lights were left on in adjacent areas pursuant to an agreement he claims to have established with his supervisor. Whether such agreement was established is not material; the fact remains that the conditions under which Maxey was found clearly indicate intent to sleep